Bear v. The B., C. R. & M. R. Co.

---

BEAR ·v. THE B., C. R. & M. R. Co. ET AL.

O'HANLAN & O'HARA v. THE SAME.

HIGLEY & BRO. v. THE SAME.

1. **Mechanic's Lien : RAILROAD : JUDICIAL SALE.**   The Burlington, Cedar Rapids & Minnesota Railway Company failed to pay the interest on its bonds November 1, 1873.   The bondholders funded the interest coupons upon the bonds for the term of eighteen months, until May 1, 1878, and continued the railway company in possession and opera- tion of the road until May 19, 1875, when proceedings for foreclosure were instituted, and the road was placed in the hands of a re- ceiver, a decree of foreclosure being subsequently entered.   The road was sold thereunder, and purchased by the bondholders, who con- veyed it to the Burlington, Cedar Rapids & Northern Railway Company, who have since operated it.   In September, 1874, the plaintiff furnished material for and constructed certain fence for the company, for which he presented a bill which has been on file in the office of the auditor since September 25, 1874, and on that date the company gave plaintiff a note for the amount, the said note being entered on the bills payable book of the company.   On the 28th of November, 1876, the plaintiff filed his mechanic's lien :   *Held*, that the lien not being filed until after the lapse of more than ninety days, and the purchasers of the road having acted in good faith, the lien could not be enforced.

   *Argument* 1.   A mere entry upon the books of the old corporation could not be construed into notice to the bondholders that plaintiff was entitled to a lien.

   *Argument* 2.   A judgment creditor, purchasing at judicial sale, stands upon the same footing, and is entitled to the same protec- tion, as any other purchaser.

*Argument* 3. The B., C. R. & M. Ry. Co., during the eighteen months it operated the road after default in interest, was not the trustee of the bondholders.

2. ———: REPAIRS: PRIORITY OF MORTGAGE. The lien of a mechanic for repairs upon a completed railway is not paramount and superior to the lien of a mortgage executed after the commencement and before the completion of the road.

3. ———: ———: ———. Nor will the lien of the mechanic upon the particular work performed by him take precedence of the mortgage, when the improvements he has made constitute an integral part of the road.

*Appeal from Linn Circuit Court.*

TUESDAY, JUNE 11.

THE plaintiffs claim mechanic's liens upon the railroad known as the Burlington, Cedar Rapids & Minnesota Railway, now the Burlington, Cedar Rapids & Northern Railway. The cause was submitted to the court upon an agreed statement of facts, substantially as follows:

The Burlington, Cedar Rapids & Minnesota Railway Company was organized in 1868, for the purpose of building a railway from Burlington, *via* Cedar Rapids, to the north line of the State. The main line was built in three divisions. The first division, from Burlington to Cedar Rapids, was completed about July 26, 1870; the second division, from Cedar Rapids to Waterloo, was completed about January 26, 1871; the third division was finished about December 1, 1872. Work was commenced on each of the first two divisions in the year 1866, and was prosecuted in 1867, 1868 and 1869; and prior to May 1, 1869, there had been expended on the three divisions the sum of one hundred and fifty-five thousand dollars in the preparation of the road-bed, and all upon the first two divisions except the cost of the survey of the third division. On May 1, 1869, the railway company executed and delivered its first mortgage to secure bonds of one thousand dollars each amounting to six millions, which were then and subsequently issued and sold before any work or material was furnished by either

of the plaintiffs. Said mortgage was recorded in the several counties along the line of the road on the 26th day of May, 1869, and between that day and the 10th of October, 1869.

On November 1, 1871, the B., C. R. & M. Ry. Co. commenced the construction of the Milwaukee extension, and prior to January 22, 1872, expended thereon about fourteen thousand dollars. On the 22d of January, 1872, the railway company executed its mortgage on the Milwaukee extension to secure two million two hundred thousand dollars in bonds of one thousand dollars each, which were then and afterward issued and sold before work or material was furnished by either of the plaintiffs. Said mortgage was duly recorded in the several counties along the line of said extension between January 26 and February 1, 1872. The extension was completed about September, 1873.

In June, 1872, said railway company commenced the construction of the Pacific division, and on and prior to November 1, 1872, had expended thereon the sum of forty-three thousand dollars. On November 1, 1872, the railway company executed and delivered its mortgage upon said Pacific division, to secure one thousand eight hundred bonds of one thousand dollars each, which were then and subsequently sold before any work or material was furnished by either of the plaintiffs. This mortgage was duly recorded December 9, 1872. The division was completed about September, 1873.

The Muscatine division was fully graded, bridged and tied a distance of twenty-five miles from Muscatine to a junction with the main line prior to July 1, 1872, by a company other than the B., C. R. & M. Ry. Co., and then conveyed to the last named company, and on the day last named the said B., C. R. & M. Ry. Co. executed and delivered its mortgage upon the same to secure eight hundred bonds of one thousand dollars each, which was duly recorded in the several counties along the line of said road on July 1, 1872. Said Muscatine division was afterward extended to Riverside, Johnson county, and

was completed in December, 1873, before any work was done or material furnished by either of the plaintiffs.

The main line is two hundred and eighteen miles in length; the Milwaukee extension ninety-four and eleven one-hundredths miles in length; the Pacific division is twenty-four and forty-one one-hundredths miles in length; the Muscatine division is thirty-one miles in length: making a total of track, exclusive of side track, of three hundred and sixty-seven and fifty-two one-hundredths miles.

On the 1st day of November, 1873, the B., C. R. & M. Ry. Co. made default in the payment of interest on the bonds issued under the mortgage upon the main line and the several branches, and soon afterward, upon the representations of said railway company, the bondholders funded the interest coupons upon the bonds of the main line and branches, for the term of eighteen months, and until May 1, 1875, and left said railway company in possession of said railway and all said branches, operating the same and receiving the rents and profits until the 19th day of May, 1875, when, upon application of the trustees of the bondholders, and upon bills filed for the foreclosure of the several mortgages, the United States Circuit Court for the District of Iowa appointed a receiver for said railway and branches, who on that day took possession of the same, and has since held possession and control thereof, with the income and profits, for the benefit of the bondholders.

At the October Term of said United States Circuit Court, for the year 1875, the bills filed for the foreclosure of each mortgage above mentioned upon the main line and the several branches were consolidated, and a decree was entered for the foreclosure of each of said mortgages for the full amount of the principal and interest of said bonds. On the 22d day of June, 1876, under the said decree of foreclosure, the main line and all the branches or divisions of said railroad were sold, and all were purchased by committees of their respective bondholders, and for the benefit of the old bondholders, and by

them were conveyed to the defendant, the B., C. R. & N. Ry. Co., a new corporation organized by the bondholders of said main line, and branches or divisions. The entire main line and all the branches or divisions are now owned or operated by said new organization. The new organization has issued, in lieu of the old bonds on the main line and branches or divisions, a single series of new consolidated bonds upon the entire road, main line and all divisions, which every one of the bondholders (except about four hundred thousand dollars, whose *pro rata* share of the bids in their respective bonds has been deposited in gold according to the order of the court by the purchaser) have received, or are entitled to receive, as follows: On the main line, eighty per cent of the face of the old bonds in the new consolidated bonds; on the Milwaukee extension, fifty per cent of the face of the old bonds in the new consolidated bonds; on the Muscatine division, thirty per cent of the face of the old bonds in the new consolidated bonds; on the Pacific division, twenty-five per cent of the face of the old bonds in the new consolidated bonds.

An amount of stock in face value equal to the new bonds was issued to the new bondholders, and this stock constitutes the only stock of the new company, and stock and bonds in the new company have been sold to other parties than bondholders for purchase of iron or materials, and adjustment of disputed claims.

The main line and each of the branches were mortgaged for more than their full value respectively, and were sold for a small portion only of the amount found due upon the several mortgages. The said B., C. R. & M. Ry. Co. is now, and has been ever since the 1st day of November, 1873, wholly unable to pay the interest upon said bonds or its other debts, and insolvent.

On the 19th day of May, 1875, all the books, papers, records and accounts for construction and repairs of the said railroad and branches passed into the hands of W. W. Walker, provisional receiver, and afterwards, in July, 1875, passed

into the hands of Gen. E. F. Winslow, permanent receiver, and so remained in his possession until the said railway and branches were sold on the 22d of June, 1876, when all the same passed into the hands of the defendant, the B., C. R. & N. Ry. Co., which ever since has had the same, and Gen. E. F. Winslow, the receiver, was elected vice-president and general manager of the B., C. R. & N. Ry., at its organization in June, 1876, and has so remained ever since. At all times since the possession of said books, records, accounts, etc., passed into the hands of said receiver, they have been open to the inspection of all stockholders of said B., C. R. & M. Ry. Co., and B., C. R. & N. Ry. Co. J. C. Brocksmit was the auditor of the B., C. R. & M. Ry. Co. during the years 1874 and 1875; was the auditor under both the receivers mentioned above; was made the auditor of the B., C. R. & N. Ry. Co. at its organization, and is such auditor now.

The B., C. R. & N. Ry. Co. was organized June 19, 1876, and its articles were recorded in Linn county on the 22d day of June, 1876, and on the 26th day of June, 1876, a deed of said railway, main line, and Milwaukee and Muscatine branches, was executed and delivered to said company by the several committees of bondholders, who purchased the same at the master's sale, and on June 22, 1876, a deed of said Pacific division was executed, which deeds were approved by the judge of the United States Circuit Court on the 20th day of July, 1876.

The bonds of the B., C. R. & M. Ry. Co. contain the following provision: "It is hereby expressly agreed by the said railway company, with each and every holder of this bond, that in case of the non-payment of any interest coupons hereto attached, if such default shall continue for six months after maturity and demand of payment, or in case of the non-payment of any installment required to be paid into the sinking fund, provided for by the said deed of trust, if such default shall continue for six months after such installment shall have become payable, then, and in either case, the prin-

cipal of this bond shall become due in the manner provided in the deed of trust, and the said company hereby expressly waives the benefit of every extension, stay or appraisement law which has been or may hereafter be enacted."

The mortgages contain the following provisions: "In case default shall be made in the payment of the interest coupons annexed to any of the foregoing bonds, according to the tenor thereof, or any payment required to be made into the sinking fund, as herein provided, and if such default shall continue for the period of six months, it shall be lawful for the party of the second part, by its duly authorized officer, agent or attorney, to enter into and upon all and singular the premises hereby conveyed, and each and every part thereof; and to have, hold and use the same under such superintendent, manager, receiver or agents as the party of the second part may select to conduct the business of said railroad and branches, and to exercise the franchise pertaining thereto, and to make from time to time all repairs, replacements, additions and improvements thereto, as may seem judicious, and to collect all earnings, dues, freights, incomes, rents, tolls, issues and profits of the same, and of every part thereof, and, after deducting the expenses of operating the said railroad, and of conducting the business thereof, and of the said repairs, replacements, additions and improvements, and of all taxes, assessments or liens upon the said premises, or any part thereof, to apply the money arising as aforesaid to the payment of interest coupons in the order in which they shall have become due, and thereafter to the payment of any installment or balance due, and payable to the sinking fund herein established; and, after paying all such past due coupons, and all installments or balances due to the sinking fund, to apply the same to the satisfaction of the principal of the aforesaid bonds which may be at that time unpaid, ratably and without discrimination or preference." The remaining facts are stated in connection with the consideration of the claims of the respective plaintiffs.

The court found for the defendant. The plaintiffs appeal.

*Hubbard, Clark & Deacon,* for appellants.

*Grant & Grant,* for appellees.

DAY, J.—I. The facts respecting the claim of Christian Bear are as follows: On September, 1874, the plaintiff Bear, by agreement with the B., C. R. & M. Ry. Co., furnished 1. MECHANIC'S fencing material and built a fence along a portion lien : railroad : judicial sale. of the line of the defendant's right of way for its railway in Linn county, of the value of eighty-one dollars and fifty cents. The account has been on file in the auditor's office of the B., C. R. & M. Ry. Co.. and in the receiver's, and in the auditor's office of the B., C. R. & N. Ry. Co., since September 25, 1874. On the 25th of September, 1874, the B., C. R. & M. Ry. Co. gave plaintiff a note for said account, payable in twelve months after date, and ever since that day the book of said B., C. R. & M. Ry. Co., the receiver, and the B., C. R. & N. Ry. Co., in the auditor's office, known as the bills payable book, has shown the note so given. A copy of the entry on the bills payable book is as follows:

| No. | Am't. | Date. | Time. | | | When Due. | Payable To. | Payable At. | Given on Acct. | When Paid. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Yr. | Mo. | Day | | | | | |
| * | * | * | * | * | * | * | * | * | * | * |
| * | * | * | * | * | * | * | * | * | * | * |
| 41 | $81.50 | Sept. 25, 1874. | | 12 | | Sept.25,1875 | Christian Bear. | U.S.Bank | Fencing | |
| * | * | * | * | * | * | * | * | * | * | * |

On the 28th day of November, 1876, the plaintiff, Christian Bear, filed his statement for a mechanic's lien, and on the 30th day of November, 1876, he commenced this action:

1. The material was furnished and the labor was performed on the 25th day of September, 1874. The statement for a mechanic's lien was not filed until two years, two

months and three days thereafter.  Section 2137 of the Code provides: "Every person  *  *  *  *  *  *  who wishes to avail himself of the provisions of this chapter may file with the clerk of the District Court of the county in which the building, erection or other improvement to be charged with the lien is situated, and within ninety days after all the things aforesaid shall have been furnished or the labor done, a just and true account of the demand due him after allowing all credits, and containing a correct description of the property to be charged with the lien, and verified by affidavit; but a failure to file the same within the time aforesaid shall not defeat the lien, except against purchasers or incumbrancers in good faith, without notice, whose rights accrued after the ninety days and before any claim for the lien was filed."   As appears from the foregoing agreed statement of facts, the main line and all the branches were sold under the decree of foreclosure, and were purchased by committees of their respective bondholders for the benefit of the old bondholders, and were by them conveyed to the defendant, the B., C. R. & N. Ry. Co.   This sale and purchase occurred after the expiration of ninety days from the accruing of plaintiff's claim, and before the statement for a lien was filed; so that, if either the old bondholders or the B., C. R. & N. Ry. Co. are to be regarded as purchasers in good faith, without notice, it is clear that the lien of plaintiff cannot be enforced.   The question of the *bona fides* of the purchase of the B., C. R. & N. Ry. Co. can be most satisfactorily considered by noticing the objections urged by plaintiff to this company's being so treated.

2.   It is urged by plaintiff that the B., C. R. & N. Ry. Co. had notice of plaintiff's claim, because the bills payable book, in possession of E. F. Winslow, the receiver, afterward, at the organization of the B., C. R. & N. Ry. Co., elected its vice-president and general manager, and in possession of J. C. Brocksmit, auditor of the B., C. R. & M. Ry. Co., and of the B., C. R. & N. Ry. Co., shows there was due plaintiff eighty-

one dollars and fifty cents for fencing, payable September 25, 1875. We do not think that the mere fact that the books in possession of persons who afterward became officers of the new corporation showed that there was a claim due plaintiff for fencing is sufficient to charge that company with notice that plaintiff was entitled to a mechanic's lien. Besides, the agreed statement of facts shows that the main line and branches were bought by committees of the bondholders, for the benefit of the bondholders. It cannot, we think, be claimed that a mere entry of this kind upon the books of the old corporation was notice to the bondholders of plaintiff's claim, and that he was entitled to a lien. If the bondholders acquired the road discharged of plaintiff's lien, it follows, we think, that the new organization also holds it so discharged.

3. It is further claimed that the sale and purchase were not such a sale and *bona fide* purchase as contemplated by the statute. It is claimed that the title of the purchasers, the mortgagees, rises no higher than the mortgage, and that the lien of the mortgage was inferior to plaintiff's lien. We have held, however, that a judgment creditor, purchasing at a judicial sale, stands upon the same footing, and is entitled to the same protection, as any other purchaser. *Gower v. Dohenry et al.*, 33 Iowa, 36.

4. It appears from the agreed statement of facts that in November, 1873, the B., C. R. & M. Ry. Co. made default in the payment of interest on its mortgage bonds, and that the bondholders funded their interest coupons for eighteen months, and allowed the railway company to remain in possession and appropriate the income of the road. Under the provisions of the bonds and mortgages it was competent for the bondholders to take possession of the road if default in the payment of interest should continue for six months after maturity and demand of payment. It is now claimed that the bondholders, in neglecting to take possession of the road and funding the interest, constituted the B., C. R. & M. Ry. Co. their trustee and agent to operate the road, and that they ought in equity

to be estopped from objecting to valid claims for the legiti-
mate operating and repair expenses. We are not authorized
to infer, from any fact agreed upon, that the B., C. R. & M.
Ry. Co. remained in possession of the road as the trustee or
agent of the bondholders. If such trusteeship or agency
existed, the B., C. R. & M. Ry. Co. would be obliged to account
for the income and profits, but no such claim is anywhere
asserted. We conclude that plaintiffs' lien cannot be enforced
against the defendant, the B., C. R. & M. Ry. Co.

II. The facts respecting the claim of the plaintiffs O'Hanlan
& O'Hara are as follows: During the months of Septem-
ber, October, November and December, 1874, in
pursuance of a contract with the B., C. R. & M.
Ry. Co., the plaintiffs O'Hanlan & O'Hara built for the said
company the stone piers under the bridges on the main line of
said road over the Iowa river, in Louisa county, and the west
abutment and the second pier from the west end of the bridge of
said railway company over the Cedar river, in Muscatine county,
on the Muscatine division of said railway, where the same
crosses the Cedar river. Upon the completion of work of the
masonry on the bridge over the Iowa river, on or about
December 1, 1874, vouchers were made out by said railway
company, and approved for payment, in favor of plaintiffs for
five thousand one hundred and twenty-eight dollars and fifty
cents. On or about January 8, 1875, a voucher was made up
and approved, in favor of plaintiffs, for abutment and pier
under bridge over Cedar river for one thousand six hundred
and one dollars and seventy-five cents. On or about January
8, 1875, an accounting was had, and seven promissory notes
were given; the first for nine hundred and five dollars and
fifty-two cents; each of the others for one thousand dollars.
The first four notes were paid at maturity, and on the fifth
two hundred and fifty dollars was paid after the receivership,
leaving unpaid notes to the amount of two thousand seven
hundred and fifty dollars and interest. The work was com-
pleted and the notes were given before the receiver was

*2. ———: re-
pairs : priority
of mortgage.*

appointed. On November 4, 1875, the plaintiffs O'Hanlan & O'Hara filed in the counties of Louisa and Muscatine, where said piers and abutments were situated, statements for mechanics' liens on said bridge, piers and abutments. When the said bridges were originally built, in 1870 and 1871, on the main line, and in 1872 on the Muscatine division, they were erected on piles driven into the river bottoms, and wood work to hold ties and iron notched into the piles and laid upon them. When these piles decayed or became unsafe they were repaired and replaced with the stone work referred to in plaintiffs' petition. This way of erecting bridges on wooden piles instead of masonry is a common way of building railroads in all the western States.

1. Section 2130 of the Code is as follows: "Every mechanic or other person who shall do any labor upon, or furnish any materials, machinery, or fixtures for, any building, erection or other improvement upon land, including those engaged in the construction or repair of any work of internal improvement, by virtue of any contract with the owner, his agent, trustee, contractor or sub-contractor, upon complying with the provisions of this chapter, shall have for his labor done, or materials, machinery or fixtures furnished, a lien upon such building, erection or improvement, and upon the land belonging to such owner on which the same is situated, to secure the payment of such labor done, or materials, machinery or fixtures furnished." Section 2139 of the Code is as follows: "The liens for labor done, or things furnished, shall have priority in the order of the filing of the accounts thereof as aforesaid, and shall be preferred to all other liens and encumbrances which may be attached to or upon such building, erection or other improvement, and to the land on which the same is situated, or either of them, made subsequent to the commencement of said building, erection or other improvement." The mortgages, under a foreclosure of which the main line and the Muscatine branch in question were sold, were executed after the construction of the main line and the

branch in question was commenced. Plaintiffs claim that under section 2139 they are entitled to a lien upon the entire line of railway, including the land, which shall have precedence of the lien of the mortgagees. In *Neilson v. The Iowa Eastern Railway Company et al.*, 44 Iowa, 71, it was held that the lien of a mechanic for work and material, furnished in the original construction of a railroad, has precedence over the lien of a mortgage executed prior to the furnishing of the work and materials, but after the construction of the road was commenced.

This case, however, involves a different principle, for, to use the language of appellants' counsel, "it will be observed that all the work was done and all the material was furnished by each of these plaintiffs after the roads upon which the lien is claimed were wholly completed. It now remains to be determined whether a railway is subject to a mechanic's lien for repairs which shall be superior and prior to a mortgage made after the commencement of the road, and before its completion. Unless this proposition can be maintained, the two last cases are at an end." It is clear that section 2130 gives a lien for repair of a work of internal improvement; but this section furnishes no rule for determining the priority between such a lien and an existing mortgage. In *Getchell & Tichenor v. Allen*, 34 Iowa, 559, where a mortgage existed upon a lot upon which was a building, it was held that the lien of a material man who furnished lumber, subsequently to the execution of the mortgage, which was used in the erection of a third story to the building, was junior and inferior to the lien of the mortgagee. It is claimed, however, that that case is not in point, because an entirely new part of the building was superadded, while in this case new piers and abutments were erected to supply the place of old ones which had decayed and become unsafe. Counsel for appellant, conceding that the case of *Getchell & Tichenor v. Allen* was decided correctly, insist that a different principle must be applied to the case at bar, because the work done by plaintiffs

consists of repairs. It is clear, however, that the principle upon which that case is decided applies to repairs as well as to additions of the kind directly involved in that case. In that case it is said: "How is it when improvements in the nature of additions or repairs to the building are made after such mortgage? The mortgage binds the house; the improvements of the character indicated become a part of the house, and are, as it were, incorporated with it. After the improvements are made they do not remain separate and distinct from the building; they have lost their distinctive character; the house includes them; they are a part of the house, and, as such, are covered by the mortgage. For the reason that the mortgage binds the improvements as a part of the house, the mechanic's lien cannot defeat the mortgagee's right." It is clear that the decision of the court below establishing the lien of the material man upon the building paramount to the lien of Allen's mortgage was reversed upon the ground that the third story became incorporated into the building, as a part of it, and subject to the mortgage. And it is evident that the principle upon which that case was decided must have led to the same result if the material had been furnished for the construction of a new roof in place of one that had become worn out and decayed. This case was approved and the same principle was applied in *The Equitable Life Ins. Co. et al. v. Slye et al.*, 45 Iowa, 615; see also *O'Brien v. Pettis*, 42 Iowa, 293. We feel satisfied that the plaintiffs are not entitled to a lien paramount to the mortgage.

2. Appellants insist that if they are denied a general lien upon the entire line of railroad, including the land, under section 2139, they are entitled to a lien upon the superstructure of the railway, its road-bed, ties, track, bridges, etc., under section 2141 of the Code, with the right to tear down and remove the piers and abutments by them erected. This section is identical with section 1855 of the Revision, and is as follows: "The lien for the things aforesaid, or work, shall attach to the buildings, erections or

improvements for which they were furnished or done, in preference to any prior lien or incumbrance, or mortgage upon the land upon which the same is erected or put, and any person enforcing such lien may have such building, erection or other improvement sold under execution, and the purchaser may remove the same within a reasonable time."

In *Getchell & Tichenor v. Allen* it was held that this section does not apply where improvements enter into and form a part of a building covered by a mortgage.

In *O'Brien v. Pettis*, 42 Iowa, 293, it was in effect held that the right to a lien under this section depends upon the question whether the improvement for which the lien is claimed is so far an independent structure as to be capable of removal without materially injuring what would remain. In this case the stone piers were constituted in the place of wooden piles covered by the mortgage. When so placed in the road they became a part of it, as the third story in the case of *Getchell v. Allen* became a part of the building, and the mortgage attached to them. They cannot, we think, be removed, nor can plaintiffs' lien be enforced under section 2141.

III. The lien of the plaintiffs, Higley & Bro., was filed November 5, 1875, and is for various articles of hardware furnished the B., C. R. & M. Ry. Co., from the 2d of January to the 17th day of May, 1875, to be used in the repair of its lines of railway, amounting in all to nine hundred and fifty dollars and three cents. The disposition made of the claim of O'Hanlan & O'Hara is decisive of the claim of these plaintiffs.

The judgment is

AFFIRMED.