ROYAL LUMBER COMPANY, Appellant, v. PETER HOELZNER et al., Appellees.

**MECHANICS' LIENS:** Establishment—Lands of Wife. Lands be-
1   longing to a wife are not subject to a mechanics' lien for an improvement erected against the protest of the wife, even though the wife did not carry her protest to the materialman. Especially is this true when the materials were sold to the husband on his individual credit.

**MECHANICS' LIENS:** Establishment—Lien on Improvement Only. A
2   wife who protests the erection of an improvement on her lands and affirmatively asserts no claim to such improvement may not contest a mechanics' lien on the building itself and the sale and removal thereof without material damage to her.

Headnote 1.  27 Cyc. p. 74.  Headnote 2.  27 Cyc. p. 226,

*Appeal from Palo Alto District Court.*—James De Land, Judge.

### December 11, 1924.

Action to foreclose a mechanics' lien for materials furnished to build a hog house on land owned by Cora A. Hoelzner, wife of Peter. The agreement to furnish the material was between plaintiff and Peter. Defendants Shadboldt & Middleton have a lien on the property, which plaintiff asks to be decreed junior to plaintiff's lien. The total account was practically $1,900. Payments made by Peter reduced this to $928 and interest. That was the amount claimed in the petition. The improvement is an independent structure, some little distance from the house, and is made of hollow clay blocks on a concrete foundation, with a cement floor, and a ventilating and heating plant. It is about 26x60 feet. It is not connected with or annexed to any other improvement on the premises. It is alleged in plaintiff's pleadings to be a permanent structure, and Mrs. Hoelzner so testifies. The real estate consists of about 19 acres within the city of Emmetsburg, and was occupied by Mrs. Hoelzner and her husband and family as a homestead. The husband is engaged in the pure-bred hog business in Emmetsburg. That is his principal occupation. The wife raises chickens, and has a garden. The case was tried as to the defendant Cora on the question as to whether plaintiff was entitled to a lien on the land, and continued as to defendant Peter for further proceedings as to plaintiff's right to a personal judgment against him. The trial court found specifically that the hog house is an independent structure, securely built, and was so fastened upon and to the realty of the defendant Cora as to constitute a permanent fixture thereon, not capable of being removed without irreparable injury and damage to the premises upon which the same is located, and that the structure could not be removed without materially injuring, if not almost entirely destroying, its value. The plaintiff appeals.—*Reversed in part.*

*Daniel Kelly,* for appellant.

*Thomas O'Connor,* for appellees.

PRESTON, J.—1. The matters before referred to are not in dispute. There are some other matters about which there is no dispute. There is no dispute as to the amount due plaintiff on the account, or as to the filing of the mechanics' lien statement within the statutory time. The material for the hog house was purchased from plaintiff by the defendant Peter Hoelzner, and charged to him individually. The building was built for the immediate use and benefit of the defendant Peter. Mrs. Hoelzner testifies that she makes no claim to the building, and never has; that she has always considered it his; that "he said he was building it for himself."

1. MECHANICS' LIENS: establishment: lands of wife.

Peter testifies that he figured that the building was his, and he told her so. "Do not know whether it is hers, either— never gave it to her." Peter has been adjudged a bankrupt since the erection of the building, but the hog house was not listed by him as an asset in the bankruptcy proceedings. Plaintiff did not file its claim therein.

The material was furnished between November, 1918, and February, 1920. The account was reduced to a note covering material purchased up to the date of the note. It was dated December 23, 1919, and was for $1,215.70. Material purchased subsequent thereto has been paid for by defendant Peter. The note is signed by Peter alone, his wife having refused to sign it. The note recites that the right of mechanics' lien is not waived or affected by giving the note. At that time, there was about $9,000 against the property. Mrs. Hoelzner did not object to the plaintiff or any of its officers that she was opposed to the erection of the hog house, nor did she mention her opposition to the contractor or the workmen. The defendants Hoelzner testify that the husband told his wife that he was buying the materials on his own credit, and that she need not worry as to any lien. The manager testifies:

"I always considered Mr. Hoelzner good; that is the reason I extended him credit. I had no reason to charge the account to anybody else, so far as I knew, and that was the reason I

extended him credit. He always paid his bills. Did not know the property was in his wife's name at that time.''

There was already a hog house on the land, 14x20 feet, which Mrs. Hoelzner said was sufficient, and she says that she so told her husband.

There is a dispute as to whether plaintiff was informed of the ownership of the real estate by Mrs. Hoelzner before the delivery of the material. Plaintiff's manager testifies that he was not so informed. The defendant Peter testifies that he told plaintiff's manager that the real estate was in his wife's name, before any material was delivered, and again when the note was given, and Mrs. Hoelzner refused to sign it. We think the weight of the evidence is with defendant as to that; but, the record title being in her, plaintiff was bound to know.

In so far as the question relates to plaintiff's claim for a lien on the real estate, we think the proposition turns on the evidence as to whether there was such consent or acquiescence on the part of the wife by failing to make objection to plaintiff. At this point it will be necessary to refer to the testimony somewhat in detail.

It appears that the husband first conceived the idea of building a hog house and purchasing same from other parties; that they offered to build and complete a hog house for $1,200, and the husband gave them a contract for one, and signed an order therefor; that, when he told his wife of this, she said to him, ''Well, you are not going to build no hog house on these premises.'' They bickered back and forth, and he said he was going to build it, and she told him he was not. She induced him not to do so, and he canceled the order. Later, Peter concluded to build the present hog house. He met Mr. Ausland, plaintiff's manager, who asked him to buy of him, and the husband then gave the order. It was a verbal order, and the husband said nothing to his wife about it. The husband testifies that the reason he did not tell her about it was because she would have done the same as she did before. Three or four weeks after the order was given, Peter hauled the first load of tile, and unloaded them on the premises. Mrs. Hoelzner came out, and asked him what he was going to do, and he told her he was going to build a modern hog house, and she said:

"Not on these premises; you can't afford it, and you can't do it. It will jeopardize this property, and you are not going to. This is my property, and I will not have it."

He told her that he had made these arrangements personally, so that the indebtedness would not be against his wife. She went into the house and commenced to cry; but he kept on hauling. She protested every day against the erection of the hog house; but he kept right on. Plaintiff's office man planned the hog house. Peter testifies that he told Ausland, when they first commenced hauling the stuff, that it was going to cost too much; that he had to pay for the stuff, and that he had to pay for it individually; that he objected to the high-priced stuff; that, on various occasions, he told them that, and Ausland and Johnson said to go ahead and build it, and they would give him all the time he wanted. Both defendants testify as to her objections, as before stated, and that he told her that he had made all arrangements to pay for it himself, and that it would not jeopardize her interest. She testifies that she did not know whether he was buying the material on credit or not,—did not know anything about it; that she kept fighting him, begging with him and pleading with him not to build it. Ausland testifies that he is general manager and treasurer of the plaintiff company; that he has known the defendants for a number of years; that he had business with Peter, but none with Mrs. Hoelzner; that the entire account is charged to Peter; that he had no talk with Mrs. Hoelzner with reference to the purchase of the material.

Appellant cites *Miller v. Hollingsworth*, 33 Iowa 224 (same case, 36 Iowa 163), to the point, as they state it, that, where the husband improves the property of his wife, and secures credit for the material, although the wife has no knowledge of his intention to procure the lumber on credit, nor that he has done so, until after the husband's death, if her estate has been benefited by the improvement, she may be liable in a court of equity. In the first case, after a trial, the court made a finding of facts, and refused to permit a recovery against the wife, the court saying that it was claimed that the contract was made with the husband of defendant as her agent; that his agency cannot be inferred from the marital relation alone; that some previous

appointment, or general holding out to the public as agent, or subsequent adoption or ratification of his acts, is essential in order to hold the wife bound thereby; that it merely appears that the wife knew that her husband intended building a house on her land, if he could procure the lumber, but she did not know that he intended procuring the lumber on credit, nor that he had done so, until after the husband's death. Reference is made in the opinion to other cases. It was held that, under the statute in force at that time, such an action must be commenced as an ordinary action upon account, the court saying that it was not intended to hold that defendant was absolutely discharged from liability, and that, if her estate had been benefited, it may be that, in a court of equity, she would be held responsible therefor. Thereafter, another suit was brought, and the case was decided on demurrer to the petition. The petition alleged that the lumber was furnished with the full knowledge and acquiescence of the defendant, and that the real estate was increased in value to the extent of the lumber furnished. A demurrer to the petition was sustained, and the case was reversed because it was admitted that the wife knew all the facts, and that, with full knowledge, she acquiesced in the acts of her husband. The case is reviewed in the note to *Milligan v. Alexander,* 4 A. L. R. 1022, at 1041. Appellant also cites *Rees v. Shepherdson,* 95 Iowa 431, and *Wilverding v. Offineer,* 87 Iowa 475. It is claimed for these cases that, where lumber for a woman's house is sold and charged to her husband personally, and it does not appear that she authorized him to contract for it in her name, she is not personally liable therefor, but that plaintiff is entitled to an equitable lien against the property. In the *Rees* case it was held that the property was subject to a lien, but that there was no personal liability because there was no evidence that appellant authorized her husband to contract for lumber in her name. It was conceded that the plaintiff was entitled to an equitable lien as against the property. Appellant testified as a witness that she gave her husband full control of the property in question, to improve it in such a way as he saw fit, and generally to do with it as he would with his own property. It was said that the *Wilverding* case was controlling.

We think the cases are not in point, as applied to the facts

in this case. It is not claimed that the husband made the contract with plaintiff for and on behalf of his wife. He testifies, as does plaintiff's manager, that the materials were sold on the credit of the husband. There is no evidence that she consented to the acts of her husband, nor is there any evidence that she ratified his acts. She was protesting to the last. She testifies that she did not know her husband was obtaining the materials on credit, and knew nothing about it. This is held to be a circumstance tending to negative the thought of agency in *Price v. Seydel,* 46 Iowa 696; *Young v. Swan,* 100 Iowa 323.

In *Reese Gabriel & Co. v. Cornell,* 172 Iowa 734, it was held that the inference that the husband was acting for his wife was not warranted by evidence which, although it showed that he represented her in some matters as to painting, repairing, procuring insurance, and so on, also disclosed that the erection of the house was an enterprise of his own, and that he entered into the contract on his own account. The court said that, if Cornell contracted in his own behalf for the erection of the house, and the contractor dealt with him with that understanding, Mrs. Cornell, the owner of the realty, was not thereby rendered liable to the contractor or subcontractors, even though he might have bound her by contract in her behalf, had he been so disposed.

In the instant case, the most that can be said is that Mrs. Hoelzner failed to object to the plaintiff or its officers. She testifies that she did not know of any reason why she should object; that she had made no contract with plaintiff, and was protesting to her husband, and had been informed by him that he was obtaining the material on his own credit. Ausland testifies that he considered the husband good, and sold the material to him on his credit.

Appellant cites *Frank v. Hollands,* 81 Iowa 164, to the proposition that, where the wife is present while the improvements are being put upon her land, and makes no objection, plaintiff is entitled to a mechanics' lien on her land. An examination of the *Frank* case shows that there was more to it than mere failure to object. Under the facts of that case, improvements on her land were contracted for by her husband, with the knowledge and consent of the wife, and she permitted the erection of such improvement without objection.

As to her failure to object, it is said in the *Milligan* case, supra, at 1038, that several of the decisions relating to the evidential significance of this fact have proceeded upon the broad ground that it does not, of itself, warrant the conclusion that the husband was acting as her agent (citing *Burdick v. Moulton*, 53 Iowa 761, and numerous other cases).

In *Halliwell Cement Co. v. Elser*, 156 Mo. App. 291, it is said that the mere fact that the wife had knowledge of the construction of the building by her husband on her property, does not, of itself, necessarily establish the agency of her husband, with authority to charge such property with a lien for material used thereon. To the same point, see *Rust-Owen Lbr. Co. v. Holt*, 60 Neb. 80 (82 N. W. 112).

In *Wadsworth v. Hodge*, 88 Ala. 500 (7 So. 194), it is said that, where the credit is given solely to the husband, he alone is bound, although it may appear that the wife knew that the building or improvements were in process of erection on her land, and said nothing.

In *Copeland v. Kehoe*, 67 Ala. 594, cited in the *Milligan* case, supra, at 1038, it is said that it would be a harsh rule that would imply, from her mere silence in reference to her title, or from her failure to dissent from the contract of her husband, an approval of it and her intention to bind her estate, and the payment of compensation which he had promised. Her estate, under the operation of such a rule, would be restored to the common-law dominion of the husband, etc. It is said in the note that it is an open question whether the argument thus advanced is as conclusive as the Alabama court assumes, and it refers to page 1035 of the note, where cases are cited which hold that the agency may be proved, not only by direct evidence, but also by testimony concerning the acts and conduct of the parties (citing *Bissell v. Lewis*, 56 Iowa 231). It was further said in that note that it is obvious that most of the descriptions of testimony which are examined on this point may be regarded in two different lights,—that is to say, either as elements indicative of the existence of an agency already constituted by the wife, or as elements tending to prove a ratification or adoption of acts which previously were not binding upon her; but that it is frequently impossible to ascertain from the language of the courts

whether they were considering the claimant's remedial rights from the former of these points of view or from the latter, or, indeed, whether their attention was adequately directed to the consideration that the evidence presented was susceptible of being discussed under distinct aspects.

It would seem that, since Mrs. Hoelzner did not know the circumstances, and that the materials were sold on the credit of her husband, and the other circumstances, her failure to object to the plaintiff should not be considered too strongly against her. It would seem that she did all she could, unless she had secured an injunction against the plaintiff, to prevent it from forcing upon her an expensive hog house that she did not want, and, as she claims, did not need. The question had already provoked dissension in the family. If the plaintiff can force a bill of lumber on her of practically $2,000, others could do the same thing, and plaster liens on her property to such an extent that she might lose it all.

The note to the *Milligan* case covers many points which might be discussed in reference to the wife's consent, ratification, her knowledge, whether credit was given to the husband alone, estoppel, and so on.

Without further discussion, we are of the opinion that the evidence is not sufficient to justify a holding that the husband was the agent for his wife, or that she consented to or acquiesced in or ratified his acts so that plaintiff is entitled to a lien on her realty. As sustaining our views, see, in addition to the cases before cited, *Redman v. Williamson,* 2 Iowa 488; *Monroe v. West,* 12 Iowa 119; *Wilkins v. Litchfield,* 69 Iowa 465; *Getty v. Tramel,* 67 Iowa 288; *Hoag v. Hay,* 103 Iowa 291.

Appellee also cites *Poe v. Ekert,* 102 Iowa 361, as holding that, where a husband agrees with his wife to erect improvements on her land and to pay for the same, one selling material to the husband on his credit, and without intent to charge the wife thereby, cannot enforce an equitable lien against the land.

2. It is contended by appellant that, even though it is not entitled to a lien on the realty, it is entitled to a lien on the building. The record is that the plaintiff filed an amendment to

2. MECHANICS'
LIENS: estab-
lishment: lien
on improvement
only.

the petition, praying, in addition to the relief asked in its original petition, that an equitable lien be established on the property, and particularly against and upon the said hog house; also alleging that, the improvement being permanent, it increased the valuation of the real estate, to the benefit of Mrs. Hoelzner. Defendants filed a motion to strike the amendment, on the ground that it set up a new cause of action. This motion was not then ruled upon, but in the final decree it was sustained. Under the circumstances, we think this was no more than a finding by the trial court that plaintiff was not entitled to a lien on either the realty or the building. We are inclined to think that the amendment should have been allowed to remain; but we are not disposed to reverse on that ground. Appellant's theory seems to be, and it so alleges, that the hog house was a permanent structure, and inured to the benefit of the owner. On this theory, plaintiff's prayer for a lien on the realty would include the building as a part of it, even though plaintiff would not be entitled to all the relief asked. The statement for mechanics' lien asks a lien upon the hog house, including the land upon which the same is situated. We think the pleadings, which also asked for general equitable relief, were broad enough to cover the question as to the building alone.

Section 3089, Code of 1897, provides, in substance, that every person who furnishes material for any building by virtue of any contract with the owner, his agent, etc., shall have a lien on such building and upon the land belonging to the owner, etc.

Section 3090 provides that the entire land upon which any such building is situated, shall be subject to all liens created by this chapter to the extent of the interest therein of the person for whose benefit such things were furnished.

Section 3096 defines "owner," and reads, in part, that every person for whose use or benefit any building is made, having the capacity to contract, shall be included in the word "owner."

Under this, we have held that the statute extends the definition of the term "owner" so as to include persons whose relation to the property is such as that they would not ordinarily be held to come within the meaning of the term, and is applicable to one having less than an absolute and unqualified title to

the property; that it means any person for whose benefit any building or other improvement is made. *Janes v. Osborne,* 108 Iowa 409; *Getchell v. Peterson,* 124 Iowa 599; *Webster City Steel Radiator Co. v. Chamberlain,* 137 Iowa 717; *Knapp v. Greenwood,* 83 Iowa 1.

Section 3090, Code of 1897, also provides for a lien on leasehold interest, and that forfeiture of the lease shall not forfeit or impair the lien upon the improvements, but that the same may be sold to satisfy the lien, and be moved away by the purchaser within 30 days.

In *Lane v. Snow,* 66 Iowa 544, it was held that, under the statutes, a right to a lien upon the improvements may exist without any contract with the owner of the fee, but by contract with the owner of the improvements. In the instant case, the husband was not a tenant; but the wife does not claim to be the owner of the building. The contract was made with the husband. In the *Lane* case, the plaintiff was claiming a lien only on the improvement. The owner of the land was not a party, and his rights were not determined. The question was whether a person who wrongfully makes improvements upon the land of another can defeat a mechanics' lien upon the improvement by showing that he had no right to enter upon the land. See, also, *Smith v. St. Paul F. & M. Ins. Co.,* 106 Iowa 224, where it was held that the interest of an equitable owner of land may be subjected to a mechanics' lien, and that, where one in *possession* of land to which he has no title, erects a building thereon, it will be subject to mechanics' lien for material used in constructing it.

On the other hand, appellees contend that the right of removal of a building to enforce a mechanics' lien depends upon the fact as to whether it is so far an independent structure as to be capable of being removed without materially injuring or destroying that which would remain. On this proposition they cite *Getchell v. Allen,* 34 Iowa 559; *O'Brien v. Pettis,* 42 Iowa 293; *Neilson v. Iowa Eastern R. Co.,* 44 Iowa 71; *Bear v. B., C. R. & M. R. Co.,* 48 Iowa 619, 632, 633; *Tower v. Moore,* 104 Iowa 345; *Conrad v. Starr,* 50 Iowa 470, 482; *Jessup v. Stone,* 13 Wis. 466. We shall not review all the cases. Some of them involve the question of priority between a claimed lien and the

. lien of a mortgage. Some of them were rendered under statutes somewhat different, but similar to the present statutes. *Getchell v. Allen, O'Brien v. Pettis,* and *Bear v. B., C. R. & M. R. Co.,* supra, were decided under sections of the statute which are now a part of Section 3095, and which provided that the lien shall attach to the buildings in preference to any prior lien or incumbrance or mortgage upon the land, and that any person enforcing such lien may have the building sold, and the purchaser may remove the same within a reasonable time. In the *O'Brien* case, it was held that the right to a lien under such statutes depends upon the question whether the improvement is so far an independent structure as to be capable of removal without materially injuring what would remain. In the *Bear* case, stone piers were constructed in place of wooden piles covered by the mortgage, and it was said that, when so placed in the railroad, they became a part of it, as the third story in the case of *Getchell v. Allen* became a part of the building, and attached to it; that they could not be removed; and that plaintiff's lien could not be enforced.

In the instant case, there is no question of priority of plaintiff's claim over a mortgage. The writer is inclined to the view that, under the circumstances of this case, it is very doubtful whether plaintiff is entitled to a lien on the building and the right to sell and remove the same, and is strongly inclined to sustain the holding of the trial court. While it is true that the hog house is an independent structure, and it, with foundation, cement floor, etc., could be entirely removed, and leave the property of the wife as it was before the improvement was made, still the materials were furnished by plaintiff, knowing that the husband, with whom they contracted, was not the owner of the land; he had no lease; he had and claimed no equitable interest in the land, and was not in possession, any more than was the owner; it was forced upon the owner, against her will; the building is a permanent structure, and became a part of the real estate. *Green v. Saxton,* 196 Iowa 1086; *Leach v. Minick,* 106 Iowa 437; *Curtis v. Broadwell,* 66 Iowa 662; *Miller v. Seal,* 71 Iowa 392.

To entitle plaintiff to remove the building, it must be found that the building can be removed without substantial injury to

the structure. *Green v. Saxton,* supra; *Tower v. Moore,* 104 Iowa 345, 347.

In the *Tower* case, it was held that, where there is no finding that the building can be removed without material injury to the security of the earlier lien holder, the land must be sold and the purchase price paid first, in payment of the prior incumbrance. That was a contest between the mechanics' lien claimant and a prior incumbrancer. There was such a finding in that case. Not so here. On the contrary, the trial court found specifically that the hog house was so built as to become a part of the realty, and was not capable of being removed without irreparable injury and damages to the premises upon which the same is located.

In *Luce v. Curtis,* 77 Iowa 347, the controversy was between the lien holder and the owner. That the question as to whether the building can be sold separately, with the right to remove, is a question of fact, and that there is a discretion in the court, see *Green v. Saxton,* supra, and the other cases cited in connection therewith. Section 3095, Code of 1897. There is no lien further than is given by the statute. *Conrad v. Starr,* 50 Iowa 470, 479.

The record title to the land was in Mrs. Hoelzner, and appellant was chargeable with full knowledge, before any of the materials were furnished. Appellant engaged in the transaction in the full light of the facts, and could have protected itself. *Kiene v. Hodge,* 90 Iowa 212, 217.

Of course, it is possible to remove any building, even a ten-story brick, with stone foundations ten feet deep, and place the property in the same condition as before. I do not think the statute contemplates a removal under such circumstances. Neither do I think it contemplates a removal under the facts of this case. The construction of the building is such that in all probability it cannot be moved as could a wooden structure,—it will probably have to be torn down. The ventilator system was furnished by plaintiff, but we are unable to determine from the statement of account that plaintiff furnished the stove heating system. If the building is torn down or moved, it would be likely to injure or destroy the heating plant, to the prejudice of whoever put it in. The owner was doubtless put to some inconvenience by having workmen and material on the premises dur-

ing the construction of the hog house, and the same will be true in case the building is torn down, to remove it. All this against her protest. They were really trespassers, so far as she is concerned, and yet all forced on her, and she was deprived to some extent of the control of her own property.

As I have said, I would affirm; but, since Mrs. Hoelzner testifies that she makes no claim to the building, and has always considered it as belonging to her husband, I yield somewhat reluctantly to the force of numbers. The decree will be reversed to this extent: that plaintiff will be given a lien on the building, with the right to remove it or sell it, and the right of removal in the purchaser, provided that plaintiff or the purchaser shall, within 30 days after such removal, put the owner's premises in the same and as good condition as before the building of the hog house, and give bond in a penalty to be fixed by the court, conditioned that this will be so done, or, if not done, that the owner may do so at her own expense, and recover the cost thereof on the bond.

The decree of the district court is modified as indicated, and the cause remanded for a decree in harmony with this opinion.—*Reversed in part.*

ARTHUR, C. J., and EVANS, STEVENS, FAVILLE, DE GRAFF, and VERMILION, JJ., concur.