CONRAD & EWINGER ET AL. v. STARR ET AL.

1. **Husband and Wife:** TRUST. A deed of trust by a husband, in favor of his wife, provided that the rents and profits of the property conveyed should be paid to the wife, and that she should control them for her sole and separate use, independent of the control of her husband : *Held,* that upon the death of the wife the husband became entitled to one-third of the land in fee, and to a life estate in the remainder.

2. **Mechanic's Lien:** TENANTS IN COMMON. Where several tenants in common mortgaged the joint property for an improvement thereon, the tenant who expended the money without applying it as intended could not recover from his co-tenants for any improvement he might have made.

3 ———: PRIORITY OF LIENS. Before the enactment of chapter 100, Laws of 1876, the only manner of establishing the priority of a mechanic's lien on a building, over a pre-existing incumbrance on the land, was by the sale and removal of the building ; and where the nature of the improvement was such that it could not be removed, the lien of the mechanic must have been postponed to the lien upon the land.

4. ———: COMMENCEMENT OF BUILDING. The commencement of a building, under the mechanic's lien law, is the first labor done on the ground, which is made the foundation of the building, and is to form part of the work suitable and necessary for its construction.

5. ———: RIGHT OF REMOVAL. The right of removal of a building to enforce a mechanic's lien depends upon the fact as to whether it is so far an independent structure as to be capable of being removed without materially injuring or destroying that which would remain.

*Appeal from Des Moines District Court.*

THURSDAY, APRIL 10.

THIS is an action brought by the several plaintiffs to establish and enforce a number of distinct mechanics' liens. By consent of parties all the issues in the cause, both of fact and of law, were referred to C. L. Poor, Esq. On the 18th day of February, 1878, the referee filed his report, finding the facts and conclusions of law as follows :

"1. On the 18th day of July, 1846, W. H. Starr, origi-

nally one of the defendan's herein, was the owner in fee of lot No. 535 in Burlington, Iowa.

"2. At said date W. H. Starr, for a valuable consideration, conveyed said lot to Joseph W. Camp upon the following trust, to-wit: That said Camp should receive the rents and profits and pay the same to Frances C. Starr, the wife of said W. H. Starr, or permit her to use the same for her sole and separate use, independent of the control of her said husband, and after her death to her heirs, subject to a life estate in the said W. H. Starr if he should survive his wife; said trustee to execute a deed for the whole or any part of the premises, upon request of said Frances C. Starr, and to such person or persons as she might direct.

"3. The said conveyance was duly recorded in Des Moines county, August 28, 1846.

"4. Said Frances C. Starr died in December, 1874, prior to any conveyance by said trustee.

"5. W. H. Starr died December 28, 1876, totally insolvent.

"6. After the death of his said wife W. H. Starr formed the purpose of erecting upon said lot 535 a block of stores, and on the 1st day of April, 1875, for the purpose of raising money to erect the same, agreed to borrow of John B. Trevor, one of the defendants herein, twelve thousand dollars for five years; the payment thereof, with ten per cent interest per annum, to be secured by mortgage upon said lot, with other real property—the interest payable semi-annually with exchange on New York.

"7. The defendants W. E. Starr, Caroline S. Cameron, Fanny Starr, and Walter C. Starr, the only children and heirs of said Frances C. Starr, joined with said W. H. Starr in executing a mortgage upon said lot No. 535, and other property, to secure Trevor in the sum so borrowed, with interest as agreed. The said mortgage bears date April 1, 1875, and was filed for record April 12, 1875, at 11 o'clock A. M.

"8. The defendant Trevor actually advanced the money

on said loan at or about the time said mortgage was filed for record. The whole amount, except six months' interest, is unpaid.

"9. Between April 1 and April 10, 1875, the foundation of said block was staked out on the north forty feet of lot 535, and the lines thereof marked by stakes, and a small frame kitchen twelve by sixteen feet on said lot, but attached to a brick house on the lot adjoining, was removed in order to make room for the new erection. Some cellar doors or window frames had been made at the shop by the superintendent of the work, some distance from said lot, prior to April 16, 1875. Models of a sheet-iron cornice were made in March of the same year, at the request of said W. H. Starr, which models were afterward, in pursuance of the original plan, actually used in the cornice of the building. Prior to April 10th a superintendent of the work had been engaged and some rubbish removed from the lot.

"10. The excavation for cellar and foundation was commenced about April 21, 1875, and the building entirely completed prior to April 1, 1876, and it is located upon the north forty feet of lot 535. The lot is one hundred and seventeen feet deep, and the building sixty feet deep.

"11. The erection was designed and completed as a block of stores, but was afterward changed and used as a hotel, and was and is an original independent structure—a brick building three stories in height, with stone foundations. The building is conceded to be worth six thousand five hundred dollars, and the lot three thousand five hundred dollars.

"12. The several plaintiffs performed labor and furnished materials in and about the erection of said building, at the instance and request of said W. H. Starr, which labor and materials were furnished at the respective dates, and were of the respective values; and claims for mechanic's liens therefor upon said lot and improvements were duly filed, as set forth in their claims, for liens herewith submitted. * * All of which claims are due and unpaid.

"13.   On the 14th day of June, 1876, the Merchants' National Bank got judgment against W. H. and Walter C. Starr for one thousand five hundred and twenty-six dollars and seventy-five cents.

"14.   On the 5th of June, 1876, L. C. Purdee got judgment against W. H. Starr for forty-five dollars.

"15.   On the 9th day of May, 1876, Acres, Blackmar & Co. recovered judgment against W. H. Starr for one hundred and fifty-seven dollars and twenty cents.

"16.   On the 1st day of June, 1876, the First National Bank of Burlington, Iowa, obtained judgment against W. H. and Walter C. Starr for the sum of one thousand four hundred and forty dollars and seven cents.

"17.   On the 11th day of April, 1876, the defendant W. H. Starr, by quit-claim deed, conveyed to the defendant Susan A. Whittlesey all his interest in said real estate in consideration of a a pre-existing debt due from said Starr to her.   This conveyance was recorded April 18, 1876.

"18.   It is conceded that the frame kitchen mentioned in the ninth finding was removed from the north to the west side of the said brick house at the time preparation was made for the erection of the building in controversy; and about the time when said building was completed—the purpose for which it had been built having been changed—said kitchen was again removed and attached to the new erection, and used as a kitchen in connection with the new building, then used as a hotel known as the 'Starr House.'

"19.   The said W. H. Starr was sixty-one years old at the time of his death, and his expectancy, according to the Carlisle tables, was fourteen years.

"20.   It is agreed by all parties that this cause may be tried and disposed of without the appointment of an administrator, and as though one had been appointed for said W. H. Starr, deceased, and made a party hereto.

"21.   The heirs of said Frances C. Starr knew of and

acquiesced in the erection of said building on said lot by said W. H. Starr.

"22.   The defendant John B. Trevor, by his agent, knew that the money was borrowed from him by Starr for the purpose of erecting the building in controversy.

"23.   The children and heirs of W: H. and Frances C. Starr signed the Trevor mortgage, expecting that with the funds raised their father would erect a block of stores on said lot.

"24.   Kaut & Kreichbaum are, by agreement, admitted as parties plaintiff, and the same admissions regarding their claims of one hundred and seventeen dollars and seventy-six cents as are found in regard to the claims of other parties.

## "CONCLUSIONS OF LAW.

"1.   At the time of the erection of said building the defendant W. H. Starr was seized of an estate for life in the land on which it was erected, and by virtue of section 2440 of the Code of Iowa he was also entitled to the one-third in fee in the same land, subject to said life estate.

"2.   The defendant W. H. Starr was the owner of the building within the meaning of the act.

"3.   The facts set forth in the ninth finding of fact do not constitute a commencement of the building within the meaning of the law.

"4.   The lien of the mortgage of Trevor is entitled to priority over all other liens upon the land.

"5.   The mechanics and material men are entitled to a first lien upon the entire building, and also to a lien upon an undivided one-third of the land, subject to the prior lien of the Trevor mortgage.

"6.   The defendant Susan A. Whittlesey took the interest of W. H. Starr in the property incumbered only by the foregoing liens.

"7.   The First National Bank has a lien for its judgment on Walter C. Starr's interest, junior to the foregoing liens.

"8.   The Merchants' National Bank has a lien on the same interest, junior to the foregoing.

"9.   The defendants Pardee and Acres, Blackmar & Co. have no interest in or lien on the land or any part of it.

"10.   I respectfully recommend that the land and building be sold together, and the proceeds distributed so as to secure to the mortgage of Trevor priority upon the land, and to the liens of said mechanics and material men priority upon the building; and that a decree be drawn in accordance with the foregoing findings and conclusions."

The plaintiffs and the defendants excepted to portions of the report.   The court overruled the exceptions of both parties, confirmed the report, and entered a decree for the plaintiffs in accordance therewith.   Both parties excepted. The defendants alone served notice of appeal.

*P. Henry Smyth*, for Fanny C. Starr *et al.*, appellants.

*Hedge & Blythe*, for John B. Trevor and First National Bank, appellants.

*Hall & Baldwin*, for appellees.

DAY, J.—I.   The first question presented by the record pertains to the interest acquired by Wm. H. Starr in the real estate in controversy upon the death of his wife, Frances.   The deed from W. H. Starr to Joseph Walter Camp contains the following:   "To have and to hold as aforesaid, upon the following trust:   That the said party of the second part shall receive the rents and profits of the above described premises, and pay the same to the said Frances C. Starr, or permit her to use the same for her sole and separate use, independent of the control of her husband, and after her death to her heirs, subject to a life estate in the said party of the first part if he shall survive his said wife.   And the said party of the second part covenants with the said party of the third part to discharge the trust above described to the best of his ability, and at any time, upon the request of the

1. HUSBAND and wife: trust.

party of the third part, to execute a deed for the whole, or any part of the described premises, to such person or persons as the said Frances C. Starr may direct."

The plaintiffs claim that at the death of Frances, W. H. Starr, as her surviving husband, became invested with one-third of the property in fee, under section 2440 of the Code, and that he also acquired a life estate in the whole by the provisions of the trust deed.

The defendants claim that, by the trust deed, W. H. Starr cut off his rights as surviving husband, under section 2440, and that at his wife's death he became invested with only the life estate provided for in terms in the deed.

The defendant cites and relies upon *Heard v. Hall,* 16 Pick., 457; *Jacobs v. Jacobs,* 42 Iowa, 600; *Stokes v. McKibbin,* 13 Pa. St., 267; and *Rigler v. Cloud,* 14 Pa. St., 361. In *Heard v. Hall* it was held that a guardian of a person *non compos mentis,* who sold real estate belonging to his ward under a license of court, and conveyed the same with a covenant that he was duly authorized to sell the granted premises, was estopped by his covenant from setting up a claim in his own right to any portion of the real estate, under a previous conveyance to him in his own right. The case applies but remotely to the question under consideration.

In *Jacobs v. Jacobs* the husband and wife, before their marriage, had entered into a contract stipulating that "each is to have the untrammeled and sole control of his or her own property, real and personal, as though no such marriage had taken place." It was held that, under the express contract of the parties, upon the death of the husband the wife could not assert her right of dower in his estate.

. In *Rigler v. Cloud* the plaintiff in error, by deed, conveyed the property in dispute to Catharine George and her heirs, in trust for his wife, Maria Rigler, and her heirs forever, to the sole and separate use of the said Maria Rigler and her heirs, and not to be in any way liable to the future control, debts, or liabilities of her present or any future husband. The court

held that the clause of the deed effectually cut off the husband's interest as tenant by the curtesy. Emphasis was placed upon the provision in the deed that the property should not be subject to *the future control* of the husband.

In *Stokes v. McKibbin* the conveyance was to one Harper in trust for Margaret Houston for life, as if she were a *feme sole*, and so that the property shall not be in the power, or subject to the debt, contract or engagement of her present or any future husband, remainder to her appointees by will, and in default to her right heirs. It was held that the husband was not entitled to curtesy in the estate. In all these cases there was some express provision showing an intention that the husband should be barred of all interest in the property. The cases concede that the question is one of intention, discoverable in the declaration of trust. There can be no doubt that a trust may be so declared as to cut off any estate in the husband upon the death of his wife. See *Bennet v. Davis*, 2 P. Wms., 316. In *Morgan v. Morgan*, 5 Madd., 248, a conveyance was made to the mother upon trust for the sole and separate use of the mother for life, with power to the mother to appoint the fee by deed or will, and for want of appointment in trust for the mother, her heirs and assigns. The question was whether the father, who survived the mother, was entitled to be tenant by the curtesy against her son, the mother having made no appointment. The court say:

"The wife was in possession of this equitable estate by receipt of the rents and profits during coverture, and there being issue capable of the inheritance, the husband, according to the rule stated, must be entitled to the curtesy, unless it can be held that the direction that the wife shall take the profits to her separate use amounts to an express intention to exclude him. At law, the husband cannot be excluded from the enjoyment of property given to or settled upon the wife; but in equity he may, and this not only partially, as by a direction to pay the rents and profits to the separate use of the wife during coverture, but wholly by a direction

that upon the death of the wife the inheritance shall descend to the heir of the wife, and that the husband shall not be entitled to the tenant by the curtesy. Such a provision was actually made in the case of *Bennet v. Davis,* and was acted upon by this court. Here the husband is partially, and not wholly, excluded from the enjoyment of the wife's property. This court would, according to the intention of the settlement, have restrained him from all interference with the rents and profits during the life of the wife, but there being no further exclusion expressed in the settlement, the court can have no authority to restrain him from the enjoyment of his general right as tenant by the curtesy in the equitable inheritance of his wife."

In the case at bar the deed of trust provides that the rents and profits shall be paid to Frances C. Starr, and that she shall control them for her sole and separate use, independent of the control of her husband. The husband surrenders all control over the rents and profits during the life of his wife, but he does not, in express terms, surrender the interest which the law may give him upon the death of the wife, without having made any disposition of her estate. We are of the opinion that, upon the death of his wife, Wm. H. Starr was entitled to one-third of the real estate in question in fee, under section 2440 of the Code, and to a life estate in the remainder, under the provisions of his deed.

II. The liens in question all arose prior to the taking effect of chapter 100, Laws of Sixteenth General Assembly, and must be enforced under the law as it stood prior to the enactment of that statute. *Brodt v. Rohkar,* 48 Iowa, 36.

III. It is claimed by appellees that W. H. Starr, as tenant in common with the other owners of the lots in question, 2. MECHANIC'S having made valuable improvements thereon, is lien: tenant in common. entitled to partition thereof, with compensation for the improvements made, and that to this entire interest the mechanic's liens attached, with the right to sell the property, and apportion the respective claims from the proceeds,

if partition cannot otherwise be effected. Several authorities have been cited by appellees, recognizing the doctrine that where one' tenant in common lays out money in improvements on the estate, a court of equity will not grant partition without first directing an account and a suitable compensation; or will, in the partition, assign to such tenant in common that part of the premises on which the improvement is made. See *Green v. Putnam*, 1 Barb., 501; *Swan v. Swan*, 8 Price, 518; *Conklin v. Conklin*, 3 Sandf. Ch., 64; *Felix v. Rankin*, 3 Edw. Ch., 323; *Town v. Needham*, 3 Paige, 546; *Hall v. Piddock*, 21 N. J. Eq., 311; *Drennen v. Walker*, 21 Ark., 539; *Stevens v. Thompson*, 17 N. H., 103.

In these cases an equity is raised in favor of the tenant, who, from his own funds, in good faith improves and enhances the value of the common estate. In the case at bar the other tenants, by mortgage upon their own property, contributed to the raising of a fund much more than sufficient, if it had been properly applied, to make all the improvements placed upon the common estate. The fund was raised for the express purpose of making this improvement. W. H. Starr, having misapplied the fund, acquired no equity, as against his co-tenants, to be reimbursed out of their estate for the improvements in question. The principle invoked by appellees does not apply to this case.

IV. It is urged by appellees that the statute of 1876, relating to mechanics' liens, in so far as it provides a remedy, 3. ——: priority of lien. is only declaratory of the powers of courts of equity, which they possessed independently of it, and that the court, prior to that statute, could order the building sold and removed as provided by the Code of 1873, or it could have taken an account of values and marshaled the securities, and sold the whole. The mechanic's lien is purely a creature of statute. If the statute did not authorize such lien it would have no existence. The statute not only creates the lien, but provides the manner of its enforcement. Where prior liens exist upon the real estate on which

the improvement is erected, the only mode provided for enforcing the priority of the mechanic's lien against the improvement is by the sale and removal of the improvement. Code, §§ 2139–2141. It is a familiar principle of law that where a statute gives a right and creates a liability which did not exist at common law, and at the same time provides a specific mode in which such right shall be asserted and liability ascertained, that mode and that alone must be pursued. *Cole v. City of Muscatine*, 14 Iowa, 296. The authorities cited by appellees do not, we think, maintain the position for which they contend.

A number of the cases cited arose in Illinois under a statute very similar to our statute of 1876. In *Whitehead v. Methodist Protestant Church*, 2 McCarter Ch. (N. J.), 135, a judgment had been recovered against the building in favor of the mechanics, and the plaintiff afterward brought a bill to foreclose under a prior mortgage. The validity of the liens was admitted, and the only question was how the relative values of the lot and the building should be determined. The case of the *Newark Lime & Cement Co. v. Morrison*, 2 Beasly Ch. (N. J.), 133, is substantially to the same effect.

The act under which these decisions were made provides for a sale of the building and lot, and that the deeds shall convey to the purchaser the building free from any former incumbrance on the land, and shall convey the estate in the lands which the owner had at any time subsequent to the commencement of the building, subject to all prior incumbrances. There was no provision for the removal of the building as in our statute. See Statutes of N. J., Act of 1853, chapter 189, § 11. It is apparent that, under this statute, it was proper to adjust the liens by sale of the premises and apportionment of the proceeds. Several other authorities are cited by appellees, but none of them, we think, maintain the broad proposition contended for, that under a statute such as ours equity may enforce the lien in a manner altogether different from and independent of that provided in the statute.

Conrad & Ewinger v. Starr.

We are of opinion that, under the law existing prior to the act of 1876, the only manner of establishing the priority of a mechanic's lien upon a building, over a pre-existing incumbrance upon the land, was by the sale and removal of the building, and that, where the nature of the improvement is such that it cannot be removed, the lien of the mechanic must be postponed to that of prior incumbrances upon the land. This construction works no real hardship, for it is always competent for the mechanic or material man to ascertain from the records the state of the title before performing labor or furnishing material.

V. It is urged, however, that the referee erred in the conclusion of law that the facts set forth in the ninth finding of 4. ——: commencement of building. facts do not constitute a commencement of the building within the meaning of the law, and that the building was in fact commenced before the mortgage was recorded. We think the conclusion of the referee upon this branch of the case is correct. In *Brooks v. Gester*, 3 Cal., 65, it is held that the commencement of a building under the mechanic's lien law is the first labor done on the ground, which is made the foundation of the building, and is to form part of the work suitable and necessary for its construction.

VI. W. H. Starr owned a life estate in the lots, and one-third of them in fee under section 2440 of the Code. By his 5. ——: right of removal. contracts he could create a lien against the property only to the extent of his right and interest therein. He could not create any lien against the interests of his co-tenants. *McCarty v. Carter*, 49 Ill., 53; *Dutro v. Wilson*, 4 Ohio St., 101; *Johnson v. Drew*, 36 Cal., 623; *Baxter v. Hutchings*, 49 Ill., 116. The other tenants in common of the property, as we have seen, provided the means for making the improvement in question. When the building was erected they owned two-thirds of it, subject to the life estate of W. H. Starr. He, under the circumstances, as we have seen, had no equity against his co-tenants for reimbursement. To this interest of W. H. Starr, and to this interest alone, the

lien of the mechanics attached. In other words, the lien attached to W. H. Starr's life estate in the whole premises, and to his estate in fee in one-third thereof, subject to the mortgage executed to Trevor, and recorded prior to the commencement of the building.

VII. How is this lien to be enforced? The referee finds that the building is an original, independent structure—a brick building three stories in height, with stone foundations. It is very apparent that, as against his co-tenants, W. H. Starr had no right to remove this building. It is difficult to see how the mechanics, in virtue of a contract made with W. H. Starr, could acquire rights greater than he himself possessed. "The lien of a mechanic on a building is subordinate to the lien of a mortgage upon the land on which the building is erected, recorded before the building was commenced. When the interest which the owner of the building has in the land is that of a mere occupant, with a right to remove the building, the right of occupancy and removal would pass by a sale under the mechanic's lien; but if the owner of the building, as between himself and others having rights in the land, would not have power to remove it, a purchaser under the mechanic's lien would acquire no right to remove it." *Jessup v. Stone*, 13 Wis., 466. In this case the court say: "There are many buildings, the material and fabrics of which are such that to remove them is to convert them into a broken and worthless mass of ruins and fragments. We cannot believe that the Legislature intended to provide a remedy, the pursuit of which must in so many cases result in the almost total destruction of the thing sought."

In *O'Brien v. Pettis & Leithe*, 42 Iowa, 293, it was held that the right of removal depends upon the fact as to whether the building upon which the materials were furnished and work done is so far an independent structure as to be capable of being removed without materially injuring or destroying that which would remain. In the case at bar the one-third interest of W. H. Starr is inseparably connected with

the two-thirds interest of his co-tenants. It also appears reasonably certain that the building could not be removed without materially injuring, if not almost altogether destroying, its value. The liens cannot, we think, be enforced through a removal of the building. The life estate of W. H. Starr has been determined by his death. The liens of the several mechanics must be established against the interest of W. H. Starr in the lot and building—the one-third thereof in fee, subject to the prior lien of the Trevor mortgage.

REVERSED.