BISSELL v. LEWIS ET AL.

1. **Payment**: NOTE: WHETHER PAYMENT OR PURCHASE. Where a party, in pursuance of a contract for the purchase of mortgaged property, sent the amount of certain overdue coupons to the trustee holding the mortgage, with a proposition to pay such coupons on condition the trustee would not insist on a forfeiture on account of the default, and the coupons were canceled and returned to him, it was held that the transaction constituted a payment and not a purchase, and extinguished the indebtedness of the mortgagor on the coupons, although the contract to purchase the property was afterward abandoned.

2. **Mechanic's Lien**: TAKING OF COLLATERAL SECURITY: WHAT IS NOT. The fact that a husband, who, as agent for his wife, contracts for materials to be used in the erection of a building on her land, also binds himself by such contract to pay therefor, will not constitute the taking of collateral security by the material man so as to defeat his right to a mechanic's lien.

3. ———: PRIORITY OF LIENS. As against those at the time holding junior liens, the amount of an existing mechanic's lien cannot be increased by an agreement of the owner to pay ten per cent interest and attorney's fees.

4. ———: VALIDITY OF: DESCRIPTION OF PROPERTY. The fact that the description in a statement for a mechanic's lien includes other property in addition to that owned by the person against whom the lien is claimed will not invalidate the lien.

5. ———: ———: TAKING OF COLLATERAL SECURITY. The taking of collateral security, after the completion of the work or the furnishing of the materials for which a lien is claimed, will not invalidate the lien though the building is not at the time completed.

6. ———: ———: FILING OF STATEMENT. As against the holders of other existing liens, it is not essential to the validity of a mechanic's lien that a statement and claim therefor should be filed with the clerk.

*Appeal from Polk Circuit Court.*

FRIDAY, JUNE 10.

ACTION to foreclose a mortgage, executed by Helen A. Lewis and Chas. G. Lewis, her husband. N. E. Walsh and John M. Day were made defendants. Other parties intervened, claiming they were entitled to mechanic's liens on the mortgaged premises superior to the lien of the mortgage.

The court entered a decree foreclosing the mortgage, and establishing the several mechanic's liens, which were decreed to be superior to the lien of the mortgage, and also that the defendant Day was entitled to priority over the mortgage for certain interest coupons he claimed to belong to him. The plaintiff appeals.

*Wright, Gatch & Wright*, for appellant.

*Barcroft & McCaughan, Detrick & Snell, Phillips & Conrad, Smith & Morris, L. W. Goode, Smith & Baylies,* and *J. H. Stevenson*, for John M. Day and Intervenors.

No appearance for H. A. and C. G. Lewis.

SEEVERS, J.—On the 25th day of July, 1877, the defendants Helen A. and C. G. Lewis executed eleven bonds, with coupons attached for the payment of the interest semi-annually, said bonds and coupons being payable to Geo. P. Bissell, or bearer, at the banking house of Geo. P. Bissell & Co., Hartford, Connecticut. Said bonds were payable ten years after date, and to secure the same the said Lewises executed a mortgage on certain real estate to " Geo. P. Bissell, trustee for the holders of certain bonds." No question is made on this appeal as to the correctness of the decree of the Circuit Court foreclosing the mortgage, or as to the amount found due thereon. Nor is it questioned that the intervenors are entitled to priority to the mortgage, if they are entitled to liens at all, as the same were adjusted in the decree of the Circuit Court, except as to the amount found due them. So far as is necessary the rights and liens of the parties will be separately considered.

I.   *As to the coupon claim of John M. Day.*

On the 25th day of January, 1878, there became due certain of the interest coupons secured by the mortgage. The

1. PAYMENT: note: whether payment or purchase.

mortgagors failed to pay the same, and Day claims he became the owner thereof, and as they were the first due that he is entitled to a lien on the

mortgaged property to the amount of such coupons prior to that of the plaintiff, to whose rights he should be subrogated to the extent of his lien, as he claims.

The plaintiff claims Day paid such coupons, in pursuance to a contract entered into with the Lewises, and that the indebtedness evidenced by said coupons was extinguished.

On the 25th day of February, 1878, Day entered into a contract whereby he agreed to purchase of the Lewises, upon certain conditions, the mortgaged premises, and thereby Day agreed to pay the interest coupons then overdue within three days, upon being made secure in so doing by the Lewises. Because of the non-payment of said coupons the whole mortgage became due, at the option of the mortgagee; therefore Day stipulated in the contract with Lewises the latter should protect him as to this, and his purchase was made on condition he should have the same time to pay the mortgage the Lewises would have had if default had not been made in the payment of the interest.

Without insisting on being secured as above stated, Day, on the next day after the contract with Lewises, remitted to the plaintiff the interest aforesaid, and wrote him: " I have purchased the property with the agreement with Lewis, to be ratified by you, that there is to be no forfeiture upon the time originally given for the payment of the loan. If in this matter I cannot have the same time that the Lewises were entitled to before defaulting on their interest, so report and return the draft."

On March 1st, the plaintiff acknowledged the receipt of the draft to pay the interest coupons, and in reference thereto said: " Which we will send to you upon payment of $3.63, interest on interest due us. If the property passes into your hands we understand that you assume the loan without any change in the time, etc., and that we hold you and also Lewises on the bond."

To this Day replied, March 9th, 1878: " Of course I am willing to pay $3.63. I do not assume payment of the loan

made to Lewises from you, though I of course expect to pay the same." On March 19th the coupons were sent to Day.

Without doubt Day intended to pay the coupons when he wrote the first letter to the plaintiff, upon the conditions therein stated, which were that there should be no forfeiture, and he should have the same time to pay as if no default had been made in the payment of the interest. This offer had not been withdrawn when the coupons were sent Day, on the 19th day of March. This amounted to an acceptance by the plaintiff of the conditions attached to the offer to pay. For if the plaintiff kept the money he could only do so upon the terms proposed by Day. Whether the $3.63 interest was paid we do not know, but clearly the plaintiff accepted the promise of Day to pay the same, or at least waived the payment of that amount before sending the coupons. The plaintiff without doubt regarded the transaction between him and Day as a payment, and not a sale of the coupons. It is said it could only be regarded as a payment on condition the bondholders agreed to waive their rights resulting from the nonpayment of interest, and this they did not do. But Day did not stipulate the bondholders should so agree; all he asked was that the plaintiff should do so; this the latter clearly did when he canceled and sent the coupons to Day. The latter got all he bargained for, because the forfeiture was not insisted upon, nor has it been at any time claimed the plaintiff or bondholders elected to consider the whole indebtedness due, because of the failure to pay said interest, or on the ground the forfeiture had not been waived. If Day had insisted the consent of the bondholders should be obtained, it might have been done. Having got all he asked, Day should not complain. We shall not stop to consider whether the plaintiff had the power to bind the bondholders or not. Day evidently believed he had, or if not so he was content to rely on his agreement to this effect, and the bondholders have never repudiated it. We think the court erred, in holding the coupons aforesaid had not

been paid, and making the same a lien on the mortgaged premises.

II. *The Claim of John M. Day as assignee of the lien of H. F. Getchell & Sons.*

In his contract with the Lewises Day agreed "to take up mechanic's liens to the amount of $5,000," and it is objected by the plaintiff: First. That Day paid off this lien in pursuance of such contract. Second. That Getchell did not have a lien, and, Third. Conceding he had, the court erred in allowing ten per cent interest on the amount due.

As to the first point, we have examined the record with care and feel well satisfied the fair preponderance of the evidence is that Day did not pay off or "take up" in pursuance of the contract aforesaid, the Getchell lien, but that he purchased it, and instead of being extinguished it was assigned by Getchell to Day.

The point made and insisted on under the second objection is that during the progress of the building for the erection of which the materials were furnished Getchell took collateral security for the performance of the contract, and therefore is not entitled to a lien. Miller's Code, § 2129.

2. MECHANICS lien: taking of collateral security: what is not.

The real estate upon which the building was to be erected belonged to Mrs. Lewis, and the contract with Getchell was made by her husband, C. G. Lewis. The latter testified he "was the general agent for Mrs. Lewis for all matters connected with that building." There is nothing contradictory to this evidence, but much to strengthen and confirm it. Such agency must, therefore, be regarded as established, and herein lies the distinction between this case and *Miller v. Hollingsworth*, 33 Iowa, 224, and *Price & Hornby v. Seydel et al.*, 46 Id., 696.

That C. G. Lewis as such agent made a contract with Getchell for and on behalf of Mrs. Lewis, entitling the former to a lien, we do not understand to be disputed, unless it be true that collateral security was taken, which had the effect

to cut off the lien. At the time the contract was made Lewis became personally responsible for its performance, and before its completion he in connection with Mrs. Lewis executed their joint note or notes for at least a portion of the amount due thereon. As C. G. Lewis was personally bound by the contract, and the notes being given in pursuance threof, the lien was in no manner affected thereby. *Bonsall v. Taylor*, 5 Iowa, 546; *Logan & Cooks v. Attix*, 7 Id., 77. Nor can such notes be regarded as collateral security for the performance of the contract. *Kidd v. Wilson*, 23 Iowa, 464; *Burdeck v. Moon*, 24 Id., 418.

But it is insisted that conceding C. G. Lewis to be the agent of Mrs. Lewis, such agency did not authorize him to enter into a joint contract binding Mrs. Lewis and himself, and that as this was done it amounted to taking collateral security. At least this is the logical result of the argument of counsel for appellant. We think that C. G. Lewis, as agent for his wife, had the power to make such contract as he deemed best for her interest, and that he could well make a joint contract binding on her and himself. In so doing the transaction amounted to this: Two persons contract for the erection of a building on the land of one of them; and because only one owns an interest in the land it cannot be said collateral security was taken on such contract and the mechanic thereby deprived of his lien.

The facts bearing upon the third objection are: That when the contract was made there was no agreement as to to the

3. ———: rate or payment of interest; notes, however, were
priority of
liens. given as has been stated, and thereon interest at the rate of ten per cent was stipulated for and agreed to be paid.

The contract was made about the 4th day of May, 1877, and the delivery of the materials commenced on the 8th day of May, and the same was completed January 12, 1878. The plaintiff's mortgage was executed in July, 1877, and the notes executed in September, 1877.

The plaintiff insists that on May 8th, 1877, Getchell had a statutory lien on the premises which could not be enlarged to his prejudice after he as a junior incumbrancer obtained his mortgage. On the other hand it is insisted by the appellee, Day, that the right to the lien at the time aforesaid was contingent, depending on the volition of Getchell. One might be claimed, but the right thereto was not fixed and absolute at the time the mortgage was executed. The plaintiff, under the law, was bound to know at the time he took his mortgage that Getchell was entitled to a lien. This being so, it follows that he was also bound to know the extent of such right, and that his mortgage was subject thereto. When Getchell availed himself of his statutory right, it related back to a period prior to the mortgage. It is, therefore, immaterial as he has so done, whether it was contingent or fixed and absolute. The effect upon the rights of the plaintiff is precisely the same in both cases.

If Getchell had a prior mortgage instead of a statutory lien it would not, we think, be claimed that the amount of such mortgage could be increased to the prejudice of a subsequent incumbrancer. We are unable to see any distinction in principle between the two, and think the court erred in allowing interest on the Getchell lien at the rate of ten per cent.

The notes aforesaid contained a provision for the payment of attorney fees, and, as we understand, the Circuit Court provided in the decree that the amount allowed therefor should be a prior lien on the premises to the mortgage. This, we think, was erroneous, for the reasons above stated as to the interest allowed in the decree.

III. *The Claim of John M. Day, assignee of the lien of Geo. C. Baker & Co.*

Counsel for appellant in their argument say: "Many if not all the points made against the Getchell lien are applicable here." We need, therefore, only refer to such as are additional to those heretofore considered, except to say the facts as to the attorneys' fees being the same, the same result must

follow. The difference as to the interest is that the contract with Baker & Co. was not made until after the mortgage was executed, and no materials were furnished thereunder until September, 1877.

The lien of Baker & Co. has priority over the mortgage, which was executed and recorded first in point of time, because the mortgage when executed was on real estate on which there was a partially erected building; and that it was to be completed, and there might be mechanic's liens thereon, was contemplated at the time the mortgage was executed. This the plaintiff was bound to know; *Neilson v. Iowa Eastern R. Co.*, 44 Iowa, 71. Baker & Co. also were bound to know when the contract was made with the Lewises, and they commenced furnishing materials thereunder, that said mortgage had been executed, and that their lien was prior thereto. So knowing, the contract was made without any stipulation or agreement that interest at the rate of ten per cent on the amount due was to be paid. This being so, we do not think Baker & Co. and the Lewises should be permitted thereafter to stipulate that interest at the rate of ten per cent should be paid, and the same become a lien on the premises superior to the mortgage.

It is objected that there is no evidence showing the materials furnished by Baker & Co. were used in the construction of the building. We, however, conclude otherwise, after a careful consideration of the evidence. We deem it unnecessary to set out or further refer thereto.

It is said the building was erected on the "west 70 feet of the north 110 feet of lots 11 and 12," and that the lien was 4. ———: validity of: description of property. claimed on the "north 110 feet of lots 11 and 12," and "that this is a misdescription, and therefore fatal to the lien." No authority is cited in support of this position, and we do not believe it is well taken. The lien was claimed on all the land owned by Mrs. Lewis, and more. The greater includes the less.

The building was not completed until January 18, 1878,

and the Lewises executed their note to Baker & Co. for the 5. ——:——: amount due December the 7th, 1877. There is no sufficient evidence to warrant the conclusion that C. G. Lewis bound himself personally at the time the contract was made, and therefore it is urged the taking a note binding C. G. Lewis personally to pay the amount due amounted to taking security therefor, and, therefore, Baker & Co. are not entitled to a lien.

<span style="font-size:small">taking collateral security.</span>

The note was taken on settlement of the account, and the evidence warranted the conclusion that Baker & Co. had at that time completed the delivery of the materials contracted for, and for which the lien was claimed.

The statute provides that no person is entitled to a mechanic's lien who " * * * during the progress of the work, erection, building, or other improvement shall take any collateral security on such contract. But after the completion of such work, and where the contractor or other person shall have become entitled to claim or have a lien, the taking collateral or other security shall not affect the right to such mechanic's lien," unless it has been so agreed. Miller's Code, § 2129.

At the time Baker & Co. took the note they were entitled to a lien. They had at that time fully " completed the work " they had contracted to do, and we think the meaning of the statute is that they might then take security for the amount due without losing their lien. The money was their due, and their right to at once file and enforce their lien was perfect. No sufficient reason has been urged why they could not obtain payment or security without waiting until the building was completed, or avail themselves of their right to immediately enforce their lien.

The object of the statute doubtless is to prevent any one from obtaining a lien who takes security for the amount due or to become due at any time before he completes his contract, be it for work or materials.

IV. *The lien of H. R. Heath.*

The Circuit Court allowed ten per cent interest on the amount due. As the facts are the same as above stated in relation to Baker & Co. it follows this action of the court was erroneous. Counsel for the appellant insist the lien was claimed on a " contract with C. G. Lewis," and as he was not the owner Heath is not entitled to a lien. The abstract states the lien was claimed of " C. G. and Helen A. Lewis" and that the material was furnished for the building under a contract with " C. G. Lewis, the owner thereof." The intervening petition of Heath alleges the contract was made with " C. G. Lewis and Helen A. Lewis." They were both present when the settlement was made and C. G. Lewis was the agent of Mrs. Lewis and acting as such at the time such contract was made. In the lien statement filed with the clerk a lien was claimed against both H. A. and C. G. Lewis. The former being the owner the lien was, therefore, claimed against her. · The statement in the lien statement that C. G. Lewis owned the building should not, we think, deprive Heath of a lien. No one could have been misled thereby. But if it be conceded the lien statement was defective and insufficient is it essential to the establishment of the lien in question, against a junior incumbrancer, any lien statement should be filed in the clerk's office. If none was required an insufficient one cannot have the effect to deprive Heath of his lien. *Kidd v. Wilson,* before cited; *Evans v. Tripp,* 35 Iowa, 371; *Neilson et al. v. Iowa Eastern R. Co.,* 51 Id., 184.

The statute provides: " But a failure or omission to file the same (the lien statement) within the periods last aforesaid shall not defeat the lien except against purchasers or incumbrancers in good faith without notice, whose rights accrued after the thirty or ninety days, as the case may be, and before any claim for a lien was filed." Miller's Code, § 2133; also 3d Sub-division of § 9, page 577. It is quite clear it is not essential to the establishment of the lien under considera-

6. ——: ——: filing of statement.

Bissell v. Lewis.

tion that any lien statement should have been filed .in the clerk's office, and the plaintiff was in no manner prejudiced by the insufficient one filed. The mortgage provides that in default of the mortgagors paying the taxes on the mortgaged property the plaintiff may pay the same and tack the amount paid to his mortgage. The mortgagors failed to pay the taxes and the plaintiff did so, after several lien statements had been filed, and as we understand it is insisted this gives the plaintiff priority over the mechanic's liens, or, if not so, then to the extent of the taxes paid, because as to said amount the plaintiff is "an incumbrancer in good faith without notice." In this view we do not concur. The plaintiff was bound to take notice of these liens whether lien statements had been filed or not at the time he paid the taxes, and, therefore, he is not an incumbrancer in good faith without notice.

V. *The liens of Comparet & Stark, Martin Tuttle, Entwistle & O'Dea, H. C. Hensen, Bolton Bros., Moore & Shaw, Samuel Green,* and *N. E. Walsh.*

It follows from what has been said the court erred in allowing ten per cent interest or attorney's fees to Comparet & Stark.

We have examined the objections made to the claims of the above named parties and believe they come within the rules above stated. Except as otherwise herein indicated, the decree of the Circuit Court is affirmed. The cause will be remanded to the Circuit Court with directions to enter a decree in accordance with this opinion, unless the parties elect to take a decree in this court, in which case one will be entered here. The plaintiff will recover his costs against all parties as to whom the decree below has been modified, and the other parties will recover their costs against the plaintiff.

MODIFIED AND AFFIRMED.