## CHARLES BETCHER CO. v. CLEVELAND *et al.*

1. Where a wife held title to a lot under a contract to purchase, and the husband, after consulting with her concerning the erection of a building thereon, purchased material therefor, both joining in the execution of notes and a mortgage on the property to the material man, the material man's right to a mechanic's lien was not defeated, on the ground that he had taken other security, in that the husband joined in the execution of the notes and mortgage, since the husband did not sign the notes as surety, but as a principal; both he and his wife being liable for the material furnished.

2. Where a wife held title to a lot under contract to purchase, and the husband and wife joined in the erection of a house thereon for rental purposes, but, the prospective tenant having failed to take the house, they moved into it, and held possession until dispossessed by the vendor, the property did not constitute a homestead, defeating the material man's right to a lien.

(Opinion filed July 11, 1900.)

Appeal from circuit court, Grant county. Hon. A. W. CAMPBELL, Judge.

Action by the Charles Betcher Company against Hannah P. Cleveland and others. Judgment for plaintiff, and defendant Seymore appeals. Affirmed.

The facts are stated in the opinion.

*H. H. Potter*, for appellant.

The taking of a note with securities by the party entitled to a mechanics lien constitutes a waiver of the lien. Ed. P. Allis Co. v. Madison, 70 N. W. 650.

A mechanics lien cannot attach to a homestead. Fallihee v. Wittmayer, 70 N. W. 642; Morgan v. Beuthein, 75 N. W. 204; Kinzman v. O'Callaghan, 4 S. D. 628.

*Geo. S. Rix*, for respondent.

The findings of the trial court will not be disturbed where there is any evidence to sustain them. Evanson v. Webster, 5 S. D. 266; Jasper v. Hazen, 58 N. W. 454; Feldman v. Trumbauer, 64 N. W. 181; Randall v. Burke Twp. 4 S. D. 337.

The taking of a note secured by a mortgage covering only the property subject to the mechanics lien does not constitute a waiver of the lien. Albright v. Smith, 2 S. D. 570; Barnard v. Gallaway, 5 S. D. 214; Milwain v. Sanford, 3 Minn. 147; Carpenter v. Glennard, 5 Minn. 119; Bissell v. Lewis, 9 N. W. 177.

A homestead interest consists of some estate in land and embraces all buildings and improvements thereon, Merrick v. Hill, 17 N. W. 268; Pinkerton v. Le Beau, 3 S. D. 440.

CORSON, J. This is an action by the plaintiff to foreclose a lien against a dwelling house situated on a lot in the city of Milbank, for material furnished for its erection. The case was tried by the court without a jury, and findings were made, and judgment entered thereon in plaintiff's favor. The sufficiency of the evidence to sustain the findings of fact and the correctness of the conclusions of law were challenged on a motion for a new trial, and from the order denying the motion and from the judgment the defendant Seymore appeals.

The title to the lot upon which the buiding was erected was held by Hanna P. Cleveland under a contract made with Seymore to purchase the same. The court, in its second finding of fact, finds that on or about the 22d day of March, 1893, the defendants Hanna P. Cleveland and William Cleveland, her

husband, made and entered into a contract with the plaintiff by which said plaintiff agreed to furnish lumber and other building material to be used by them in the construction of a dwelling house upon the lot described in the complaint, and that said lumber and building material were so used in the construction of said building, and that the defendants promised to pay for the same. The court finds, in its fifth finding, that, at the time said lumber and building material were furnished by the plaintiff, said defendants Cleveland and wife had possession of the premises under and by virtue of a contract for the purchase of the same, and that subsequent to the erection of said house the said Clevelands were dispossessed of said premises by said appellant, Seymore, who is now the party in possession of the same. The court, in its fourteenth finding, finds that the premises described were not the homestead of the defendants the Clevelands, and that said premises were not the homestead of the appellant, Seymore. The court further finds: "(15) That the evidence in the action shows that both Hanna P. Cleveland and William Cleveland were personally liable for the lumber and materials used in the construction of said dwelling house, and that they both purchased the same, and were liable therefor, and agreed to pay the plaintiff therefor." It is well settled in this jurisdiction that it is only when this court is satisfied that there is a clear preponderance of the evidence against the findings of the trial court that the decision of such court will be reversed. Randall v. Burk Tp., 4 S. D. 337, 57 N. W. 4; Evenson v. Webster, 5 S. D. 266, 58 N. W. 669. The theory of the appellant seems to be that the contract for the purchase of the lot being in the name of the wife, Hanna P. Cleveland, William Cleveland, in making the contract for the

material, was acting as her agent, and that as he joined with her in giving the notes for the lumber, secured by the mortgage upon the property, the plaintiff thereby received collateral security for the material furnished, and hence that the building erected upon the premises is not subject to a lien under the statute. But this contention is not sustained by the evidence. After a careful examination of the same, we are unable to say that the evidence preponderates against the findings of the court; but, on the contrary, we are inclined to the opinion that the court's findings are fully sustained by the evidence. William Cleveland, who was the principal witness in the case, testified as follows: "I am one of the defendants. Hanna P. Cleveland is my wife. * * * Some time in the month of March (I think), 1893, I made a proposition to Mr. Fairchild [the agent of the plaintiff] to furnish me material which I would want to construct and finish up a building or dwelling house; and he thought it would be all right, but would like to have me see Mr. Betcher. It was not a great while after before Mr. Betcher came to Milbank, and I spoke to him about it, and asked him how it would be, provided I wanted five or six hundred dollars' worth of lumber and other material; and I told him the circumstances—how I had bought a lot, and how I expected to pay for it, and that I had rented the property for five years, providing I built a building—and he said: 'All right. Go ahead;' he thought it would be all right. And I got the lumber of Mr. Fairchild, and went on with the building until they stopped me." He also testified that he and his wife gave their notes for the amount due upon the lumber, and secured them by a mortgage given by himself and wife. He subsequently, on cross-examination, stated that the two notes refer-

red to in the mortgage represented the amount of lumber purchased from the plaintiff, that the lumber was purchased for himself and wife, that they gave security upon the building wherein the lumber was placed, and that was the only security given.   He concluded his cross examination as follows:  ''I built the house for the purpose of renting it.   I did not expect to live in it as a homestead".   The witness further testified: ''My wife did not have any talk at all with Mr. Betcher about the purchase of this lumber, but I talked with my wife—talked the business over; what I would have to do, and how much material we would have to buy on time, etc.   We did that as we naturally would.   She understood pretty near all that I did in a business way.   I don't know as she ever told me I should go and buy this lumber.   *   *   *   I told Mr. Fairchild that my wife owned the lot, and, if I failed to have the money in the fall, we were to give the notes.   We both signed these notes. I made the contract for my wife for the purpose of building upon her property."   It will thus be seen that the husband, in his testimony, clearly shows that he bought the lumber nominally for himself, but probably, in view of all the evidence, it was properly found to be for himself and wife.   It will be further observed that the house was not erected for a homestead for himself and family, but to rent.   It appears, however, from his evidence, that, the party who had contracted to rent the building failing to take the same, he and his wife subsequently occupied the premises as a home.   At the time the lumber was contracted for and was being used in the construction of the building, the parties did not regard it as their homestead, and did not intend to make the same their homestead.   It seems quite clear, therefore, from the evidence, that both Cleveland

and his wife were liable for this lumber; and hence the giving of these notes constituted no new security, within the meaning of the statute. What will constitute such new security is thus stated in Allis Co. v. Madison Electric Light, Heat & Power Co., 9 S. D. 459, 70 N. W. 650: ''While the notes given by the party primarily liable will not ordinarily be held to be a waiver of the lien, a note with third persons as sureties will be regarded as collateral security, and held to constitute such waiver.'' Bissel v. Lewis, 56 Iowa, 231, 9 N. W. 177. We are of the opinion, therefore, that the decision of the court was clearly right, and that the plaintiff was entitled to a lien upon the building, under the decision of this court in Pinkerton v. La Beau, 3 S. D. 440, 54 N. W. 97. The judgment of the circuit court, and the order denying a new trial, are affirmed.