**BARKER'S INC., Appellee,**

v.

**B.D.J. DEVELOPMENT COMPANY and Unibank & Trust Company, Appellants,**

and

**Johnson County, Iowa, and City of North Liberty, Iowa, Appellees.**

No. 65178.

Supreme Court of Iowa.

July 15, 1981.

Charles A. Barker, Iowa City, for appellant uniBank.

Bruce L. Walker of Phelan, Tucker, Boyle & Mullen, Iowa City, for appellee Barker's.

J. Patrick White, Asst. Johnson County Atty., for appellee Johnson County.

Marion R. Neely, Iowa City, for appellee City of North Liberty.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal deals principally with priority as between a mechanic's lien and a mortgage.

Jim Reid as representative of B.D.J. Development Company (comprised of *B*ill Yansky, *D*onnie Shull, and *J*im Reid) contacted Dave Schmitt as owner of Dave Schmitt Construction Company in December 1977. BDJ planned to subdivide an area for residential housing in the City of North Liberty, and solicited a bid from Schmitt for the installation of sanitary sewer, storm sewer, and water main systems. Schmitt examined plans in February 1978, and on March 9 made a proposal which was accepted.

About March 1, 1978, Barker's, Inc. and BDJ orally agreed that Barker's would do grading work on the land at a later date.

On March 4 and 16, 1978, Yansky, Shull, and Reid purchased the land to be used in the subdivision. The deeds were recorded March 20, 1978.

The land was subdivided, and on March 31 the three owners and their wives gave a mortgage to uniBank & Trust Company for essentially the same land they had purchased.

Schmitt began work about April 4, 1978. North Liberty approved the subdivision on April 11, and a preconstruction meeting of the contractors was held April 12. On April 14, uniBank's mortgage was recorded. At that time a substantial portion of the sanitary sewer had been installed.

On April 27, 1978, Yansky, Shull, and Reid and their wives conveyed the mortgaged land to BDJ, a corporation. The deed was recorded on May 12.

Schmitt finished work on May 16, 1978. Metro Pavers, Inc. installed storm water catch basins from May 22 to 27. Barker's did grading work from June 8 to 23. Schmitt did additional work on August 11 and 12, and Barker's did further grading from August 17 to 25. River Products Company provided rock for the road subgrade on August 23, and Metro Pavers paved and backfilled from August 23 to October 12.

Barker's filed its mechanic's lien against BDJ and Yansky, Shull, and Reid on October 17, 1978; Metro Pavers filed on October 25; and River Products filed on December 1. Metro Pavers and River Products did not press their claims, and we give those parties no further consideration.

I. The trial court held that Barker's lien had priority over uniBank's mortgage. This result was reached by making Barker's lien effective for priority purposes against uniBank's mortgage from the first date work was done by anyone on the project. The court so interpreted "original commencement of the work" in section 572.-18, The Code 1977. That section provides (emphasis added):

Mechanics' liens shall be preferred to all other liens which may attach to or upon any building or improvement and to the land upon which it is situated, *except*

*liens of record prior to the time of the original commencement of the work or improvements*; but the rights of purchasers, encumbrancers, and other persons who acquire interests in good faith and for a valuable consideration, and without notice, after the expiration of the time for filing claims for such liens, shall be prior to the claims of all contractors or subcontractors who have not, at the dates such rights and interests were acquired, filed their claims for such liens.

The court's interpretation was crucial to the result; although Schmitt began work on April 4 (after the mortgage was executed on March 31 but before it was recorded on April 14), Barker's did not begin work until June 8. If Barker's lien is to have priority over the uniBank's mortgage, the priority must be predicated on the date of original commencement of work on the project as a whole.

Unibank appeals, asserting the trial court erred in holding that liens for subsequent work can be tacked to the first work done by any party on the project. The bank urges the priority of the lien of each mechanic dates from the first work done by that mechanic, as against a recorded mortgage.

The trial court relied on *Neilson v. Iowa Eastern Railroad*, 44 Iowa 71 (1876). The facts of that case are surprisingly similar to these. There as here work commenced on a project prior to recordation of a mortgage. The work for which the mechanic's lien was claimed, however, did not begin until after the mortgage was recorded. The applicable statute had previously read, "lien upon the land, including the building . . ., against all except incumbrances by judgment rendered and by instrument recorded before commencement of the work or the furnishing of the materials." It had been revised to read, "commencement of such building, erection or other improvement." *Id.* at 73–74. The latter language is similar to the language of present section 572.18. The *Neilson* case contains this analysis:

Such was the law from 1851 to 1860. By section 1853 of the Revision, the me-

chanic's lien is made to attach from the commencement of "the building, erection or other improvement." The language of this statute differs materially from the former. The question in this case is: does it mean the same thing? We are of the opinion that it does not. If the mechanic's lien is to attach only from the commencement of the work for which it is claimed, why should language be abandoned which expressed that idea unequivocally for other language which does not? Indeed, the language of the Revision cannot be made to express that idea by any proper rules of construction. It provides that the lien shall attach from the commencement of the building. According to the construction contended for by the intervenors, it does not necessarily attach from the commencement of the building. It does so only when the commencement of the particular work in question happens to coincide with the commencement of the building. According to that construction, the words "building" and "erection" have no force in the statute. But the rules of construction require that some force shall be given to every word, if it can be done consistently.

The idea that the mechanic's lien attaches only from the commencement of his particular work, is wrought out through the supposition that the word "improvement," as used in the statute, denotes the several distinct and successive jobs of work performed by the different mechanics. But this construction is precluded by the use of the word "other" before "improvement." The lien is to attach from the commencement of "the building, erection, or other improvement." The statute implies that a building is an improvement, and that an erection is an improvement, and that there may be others still. We understand by "other improvement" the result of mechanical labor or materials furnished other than buildings or erections upon real estate.

*Id.* at 73–74. The *Neilson* court went on to say:

If the word "improvement," as here used, does not mean some entire thing, but means the mechanic's particular work which has entered into the construction of the thing, the result is that the brick-layer who has laid the brick of a house has a lien upon the brick, the plasterer upon the plastering, the paper-hanger upon the paper, the painter upon the paint, the frescoer upon the frescoes; and the remedy provided by statute for each one of the mechanics is, that he may sell and remove his "improvement." ... The statute, by this construction, is converted into a mockery and a cheat.

*Id.* at 75. *See also Geiser v. Permacrete, Inc.*, 90 So.2d 610, 612–13 (Fla.1956).

*Neilson* is bolstered by the recent decision of *Diversified Mortgage Investors v. Gepada, Inc.*, 401 F.Supp. 682, 685 (S.D.Iowa 1975). Applying Iowa law, the federal court stated:

The parties agree that the question of whether Andersen "commenced" work prior to September 25, 1972, is a matter of Iowa law. The Court has been unable to find any recent Iowa decisions which shed light on this matter of statutory interpretation. The Court's research does indicate, however, that two older Iowa rulings in this area are still viable. In *Conrad & Ewinger v. Starr*, 50 Iowa 470 (1879), the Iowa Supreme Court endorsed the view "that the commencement of a building under the mechanic's lien law is the first labor done on the ground, which is made the foundation of the building, and is to form part of the work suitable and necessary for its construction." *Id.* at 481. This statement was reaffirmed in *Kiene v. Hodge*, 90 Iowa 212, 215, 57 N.W. 717 (1894).

We find *Neilson* persuasive. In this case Schmitt's job undoubtedly constituted "work or improvements" under section 572.18. It involved men and heavy equipment working on the subdivision installing concrete and pipe. *Gepada* indicates that the commencement of the project dates from the time the premises are sufficiently made ready for the improvement to give notice to third persons. Schmitt's work had progressed to that stage before the mortgage was recorded. Although Schmitt did not file a lien, other claimants' liens relate back in time to the beginning of his work for their priorities as against the mortgage, if their liens are timely filed. We do not find that this causes an unjust result; all the mechanics added value to the property.

UniBank argues that lenders, being unaware of future mechanics' liens, will not lend on partially constructed buildings. The *Neilson* court likewise answered this argument:

But it is said that it would be unjust to the mortgagee who has taken a mortgage upon a partially constructed building, erection, or other improvement, to make his mortgage subject to mechanics' liens for work subsequently commenced. It is argued that the mechanic may always know what incumbrances rest upon the property by mortgage, but that the mortgagee cannot know what incumbrances may come to rest upon the property by mechanics' liens. To this it may be said that, where a person takes a mortgage upon a partially constructed building, erection, or other improvement, the possibility of mechanics' liens attaching upon the property is distinctly foreshadowed by the condition of the property. It is true the mortgagee cannot know the amount. He cannot know, indeed, whether the building, erection or other improvement will be completed according to the plan of the mortgagor at the time the mortgage is executed. But we think that the mortgagee may properly be required to rely upon the good faith and prudence of the person whom he elects to make his mortgagor. Furthermore, the increased value of the security may be presumed to be somewhat in proportion to the expense incurred upon the property. Without denying that the statute, as we construe it, may sometimes work a hardship, the danger to be apprehended is not such as to exert much influence in the construction of the statute, the language employed being almost, if not entirely, free from ambiguity.

*Id.* at 75–76. UniBank's argument is further answered by a recent analysis of the problem in Stone, *Mechanic's Liens in Iowa*, 30 Drake L.Rev. 39, 105 (1980–1981):

The disadvantage of allowing all mechanic's lienors to relate their priority back to the date of commencement of the first work on the project is that such a rule makes considerably more difficult the owner's efforts to refinance during construction. At the time when refinancing might be necessary, potential lenders or mortgagees would be uncertain as to the value of mechanic's liens to which the mortgagees would eventually have a junior lien. Any claimant who would come to the project after the mortgage was executed would obtain priority over the mortgagee by virtue of the earlier commencement of work by another person. The opportunity to refinance would not be lost entirely, however, [as] the mortgagee could obtain subordination agreements from potential mechanic's liens claimants that would accord priority to the mortgagee.

Here the work had no substantial lapses which would be considered completion or abandonment of the project. *See Bissell v. Lewis*, 56 Iowa 231, 238, 9 N.W. 177, 180 (1881). The trial court pointed out:

The stipulation and evidence indicated that the owner, BDJ Development Company, hired various contractors who dovetailed their work together to complete one contract. One contractor was to do the sewer and water work, another the grading, another the cement work, and another provided sand and gravel. None of these could be referred to as a principal contractor or as a general contractor. Each of their work was a part of a general plan that was to be completed without interruption. It should have been obvious to the Defendant, Unibank, on the date they filed their lien, that work was going on the premises and that the sewer and drainage problems that were taken care of were not one principal contract but were part of a project of a complete development. It would be similar to excavation work and preparation for a foundation of a building referred to as the commencement of work under such statutes in 1 ALR 3d 822, Parg. 2, pg. 824.

Our interpretation of section 572.18 finds support in our recent consideration of this statute in *Northwestern National Bank v. Metro Center, Inc.*, 303 N.W.2d 395, 397, 401 (Iowa 1981), and in the decisions of other jurisdictions interpreting similar statutes. *Lily Flagg Building Supply Co. v. J. M. Medlin & Co.*, 285 Ala. 402, 407, 232 So.2d 643, 648 (1970); *Wahl v. Southwest Savings & Loan Association*, 12 Ariz.App. 90, 94, 467 P.2d 930, 934, *vacated in part*, 106 Ariz. 381, 476 P.2d 836 (1970); *3190 Corp. v. Gould*, 163 Colo. 356, 360–61, 431 P.2d 466, 469 (1967); *Broderick v. Overhead Door Co.*, 117 So.2d 240, 244 (Fla.Ct.App.1959); *Metropolitan Life Insurance Co. v. First Security Bank*, 94 Idaho 489, 492, 491 P.2d 1261, 1264 (1971); *Capital Bank & Trust Co. v. Broussard Paint & Wallpaper Co.*, 198 So.2d 204, 208 (La.Ct.App.1967); *National Lumber Co. v. Farmer & Son, Inc.*, 251 Minn. 100, 103, 87 N.W.2d 32, 35 (1957); *Drilling Service Co. v. Baebler*, 484 S.W.2d 1, 9 (Mo.1972); *Wayne Building & Loan Co. v. Yarborough*, 11 Ohio St.2d 195, 207–08, 40 Ohio Ops.2d 182, 190, 228 N.E.2d 841, 850–51 (1967); *Hamilton National Bank v. Long*, 189 Tenn. 562, 567, 226 S.W.2d 293, 296 (1949).

UniBank further argues that when the contracts were made and work commenced on the subdivision, BDJ was not the owner of the land, and that the mechanic's lien of Barker's was therefore not effective when Schmitt began. Appellant cites three Iowa cases for this proposition: *Society Linnea v. Wilbois*, 253 Iowa 953, 113 N.W.2d 603 (1962); *Queal Lumber Co. v. McNeal*, 226 Iowa 637, 284 N.W. 482 (1939) and *Marker v. Davis*, 200 Iowa 446, 204 N.W. 287 (1925).

UniBank's cases are distinguishable. They involved situations in which a person who was considering the purchase of property had work done on it before purchasing; record title was in a third party. In the case at bar, record title was in Yansky, Shull, and Reid. They were agents of BDJ and represented themselves as such. The

mechanics were thus contacted by and dealt with BDJ's representatives. Neither BDJ nor Yansky, Shull, and Reid can avoid the mechanics' rights to liens and priorities under these circumstances by the device of placing title in BDJ. The parties dealt with the property as though the corporation owned it all along. *See Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 593 (Mo.1962). Similarly, the three principals of BDJ who held the property collectively in their individual names at the time the contracts were made and work began fall within the definition of "owner" under section 572.1(1) of the Code, due to the benefits they received from the improvements. The mechanics thus dealt with the owner in contracting for and making the improvements. *See Northwestern National Bank v. Metro Center, Inc.*, 303 N.W.2d 395, 400–01 (Iowa 1981); *Veale Lumber Co. v. Brown*, 197 Iowa 240, 243, 195 N.W. 248, 249–50 (1923).

The trial court correctly granted priority to Barker's lien over uniBank's mortgage.

II. We turn to the question of priority of tax liens of Johnson County over the other liens, and to North Liberty's rights.

 The trial court held that tax liens were prior to the rights of the mortgagee and the mechanics. Johnson County argues that this is correct, and cites *Linn County v. Steele*, 223 Iowa 864, 273 N.W. 920 (1937). In *Steele*, this court compared a section of the Code of 1924 with the three sections which replaced it in the 1935 Code. The sections of the latter Code are substantially intact in sections 445.28 to 445.32 of the Code of 1979. In *Steele* the court stated, "Whether this statutory lien is paramount to other liens upon the property depends upon whether the legislature intended it to be such, and this intent must be ascertained from the express language of the statute or by necessary implication." *Id.* at 867, 273 N.W. at 921. The court found such intent in the sections and held the tax lien of Linn County was superior to the nontax lien. *Id.* at 873, 273 N.W. at 924. *See also United States v. Schroeder*, 204 F.Supp. 199, 204 (S.D.Iowa 1962). We thus hold that the Johnson County tax liens have priority over the mortgage and mechanics' liens.

 Similarly, the trial court upheld the requirements of North Liberty regarding residential subdivisions. To the extent those requirements fall within the home rule powers of North Liberty, or chapter 409 of the Code, *see Oakes Construction Co. v. City of Iowa City*, 304 N.W.2d 797 (Iowa 1981), they control the rights and obligations of the other parties to this action with respect to the subdivision.

We uphold the judgment.

AFFIRMED.