## EVENSON v. WEBSTER.

1. Where plaintiff introduces in general evidence, as a part of her case, a written instrument, apparently properly executed and delivered, she thus asserts its competency, and she cannot afterwards, to avoid a benefit claimed by defendant under it, object that there was no proof of its execution and delivery.

2. The evidence in this case, however, examined, and *held* to support the findings of the trial court that the instrument was in fact properly executed and delivered.

3. In an action to recover possession of real property, plaintiff must recover if at all, by showing his own title or right. Failing in this, he cannot complain that the evidence does not establish defendant's right to possession.

(Syllabus by the Court. Opinion filed April 13, 1894.)

Appeal from district court Minnehaha county. Hon. JOHN E. CARLAND, Judge.

This case was first decided by this court in an opinion filed December 8, 1892, reported in 3 S. D. 382, in which opinion the court affirmed the judgment of the lower court for the defendant. A rehearing was subsequently granted and the case reargued at the April term, 1893. This opinion is upon the rehearing. The former decision, affirming the judgment in favor of the defendant, adhered to.

*Palmer & Rogde*, for appellant, the petitioner for rehearing.
*Davis, Lyon & Gates*, for respondent.

KELLAM, J. This case is now before us upon a reargument. The facts are stated in the former opinion, reported in

3 S. D. 382, 53 N. W. 747.   In the former opinion we held that, as there was no motion for a new trial, we could not examine the question of the sufficiency of the evidence to sustain the findings of fact by the court.   In the petition for rehearing it was very earnestly urged that such a holding, while consistent with the former opinions of this court, was an innovation upon the practice of the territorial supreme court, and as this case was tried in a territorial court, and the record made prior to the admission of the state and the organization of this court, and, therefore, prior to the promulgation of what is claimed by appellant to be a new rule of practice as to the necessity for a motion for new trial in such case, the right of appellant to have the case reviewed upon its merits ought not to be cut off by a change in the practice which they could not anticipate when they made the record.   Without intending to concede that this court has changed the rule of the territorial supreme court in respect to the matter indicated, we will examine the evidence as to the particulars in which it is claimed to be insufficient to support the court's findings of fact.

It is contended, first, that there was no sufficient evidence of the execution of the instrument under which defendant claims the title passed from Simonson to Larson.   Ole Bergeson who appears upon the instrument as a witness, testified as follows:   "One day in the month of November, 1879, he (Simonson) sent for me to come up to Hans Larson's house.   When I came to Hans Larson's, he asked me some questions.   Said he had made an agreement with Hans Larson to stay with him, and he wanted me to draw an agreement.   Exhibit B is the agreement I drew up.   We spoke considerably.   He said he was sick, and wanted me to draw this agreement.   It was executed a little after dinner.   Hans Larson was present at the time, * * * At the time Exhibit B was executed, Simonson was kind of sick to look at."   Again, in cross examination he testified:   "At the time the instrument (Exhibit B) was executed by mark, there were only Staale Simonson, myself, Hans

Larson and family present. I was the only one who signed as a witness, and who witnessed the execution." Appellant suggests that whether what was then and there done constituted an execution of the instrument was a legal question, upon which the witness was not competent to express an opinion, and that it was without probative force; but it is evident the word "execute" and its derivatives were used by the witness to express a fact as to the signing of the paper, or, what might be equivalent, the making of his mark. While the witness does not say in so many words that Simonson signed this paper (Exhibit B) the testimony admits of no other rational interpretation. At all events, it tends to show its execution by him, and in the absence of evidence having an adverse tendency, either through cross examination or otherwise, it is preponderating and sufficient to support the finding that he did sign it. But, beyond this, the plaintiff herself put the instrument in evidence, and thus not only admitted, but asserted, that it was executed, and used it as only an executed instrument could be used. In his work on Trials (Section 823), THOMPSON says: "When an instrument in writing is received in evidence without objection, proof of its execution is waived." But it would be anomolous to hold that one party, by the negative act of failing to object, was estopped, but that the other, who affirmatively put the instrument in evidence, was still in position, if he subsequently found it for his interest, to dispute the authenticity of his own evidence.

It is next claimed that the evidence was insufficient to show that Exhibit B was delivered to Larson. This, as we have already noticed, is the instrument by which Simonson's title passed to Larson, if it passed at all. As already noticed, the instrument was introduced by the plaintiff. It is a part of her evidence. It was not called for by defendant, nor was he, apparently, in any manner responsible for its introduction; and while this court cannot readily see its advantage to the plaintiff, or why she offered it, the fact remains that she did it,

and did it voluntarily; and it must be presumed that she did it deliberately and intelligently, and for the purpose of supporting her theory of the case, or, at least, that she was willing it should go into the case as evidence for what it purported to be or what it was worth. When so put in evidence generally, it was there for all the purposes of evidence in the case. The defendant, in order to claim the benefit of the legal effect of the instrument already in evidence generally, could hardly be required to commence anew, and prove its execution and delivery, and put it in evidence again. The facts in this case do not bring it within the rule, cited by appellant, in 1 Greenl. Ev. § 571. The instrument, or conveyance, as this court has held it to be, was not produced under the coercion of a notice, but was evidence voluntarily offered by plaintiff to support her case. When she offered and procured its admission as evidence, she vouched for its authenticity, and from that time on sustained the same relation to it that she did to any other evidence or witness introduced by her. The adverse party would naturally and justifiably so understand it, and of course would make no effort to prove the authenticity of a paper already fully and unqualifiedly admitted in evidence. There is nothing in the record from which it would appear that it was introduced for any special purpose, or for any other than general effect in favor of the party introducing it. If never delivered it was inadmissible, save for some exceptional purpose. It was not so offered or so admitted. When plaintiff voluntarily put the instrument in evidence, generally, as a part of her case, she treated it as an operative delivered instrument, and the defendant was not called upon to prove its delivery. To allow her now to attack it on the ground of its non-delivery would be to allow her, without any facts to justify it, to impeach her own witness. A party offering testimony declares in effect that it is competent and proper, and he cannot afterwards, finding that it militates against him, assert its incompetency. Wheelock v. Godfrey, (Cal.) 35 Pac. 315. These views, if correct, dispose

of all questions concerning the delivery of the instrument to Larson. But, upon the evidence itself, we think its delivery as a fact sufficiently appears. Ole Bergeson, who drew and witnessed the instrument, testifies: "The agreement, (Exhibit B) was delivered to Larson as soon as it was signed." On cross-examination, he said: "The agreement (Exhibit B) was turned over into my hands, and I turned it over to Larson right then and there." Appellant contends that, although this evidence may tend to show an actual manual delivery to Larson, it was unauthorized, and in law inoperative, because the evidence shows that, as a part of the same transaction, Larson, on his part, was to give back to Simonson an obligation for his care and keeping, and that until that was done, which never was, Bergeson, could not rightfully deliver the instrument to Larson. The evidence upon which this contention rests was brought out on cross-examination of Bergeson, and is as follows: "Q. When was he (Larson) to have that land? Did you understand, at that time? A. Well, of course, it was intentional afterwards. I intended to draw up an agreement for Staale Simonson, so as to bind Larson. I was to draw up another agreement for Staale Simonson afterwards for him to bind Larson,—to hold him, to keep him there. That was agreed upon at the time of drawing Exhibit B, and the same agreement. Larson was there, but I didn't draw it up." The witness had already testified that, as soon as the agreement was signed, it was turned over to him, and he turned it over to Larson right then and there. The paper was thus in fact handed over to Larson, and went into his possession. He retained it, and for several years it was treated as properly delivered to him. In such case the presumption is that it was delivered to him by the authority of the maker. 5 Am & Eng. Enc. Law, 447.

Does the evidence recited above negative the authority of Bergeson to deliver the instrument to Larson as and when he did? It does not, as a matter of law, unless it conclusively

shows that the instrument was delivered to him in escrow. Upon this evidence the intention and purpose of Simonson in turning over the paper to Bergeson, or in allowing him to take possession of it after its execution, is a question of fact. Upon this question the evidence (and we have quoted it all) is brief, and not entirely convincing either way. It is evident that, upon the trial, counsel did not regard the question of delivery a controlling one. It is apparent from this evidence that Simonson was to have an agreement from Larson that he would take care of him. Ordinarily, this would have been delivered simultaneous with the deed, but this would be optional with Simonson. He might leave it for subsequent execution and delivery, if he chose. Bergeson, who, so far as appears from the evidence, was entirely disinterested, was called there by Simonson for the purpose of making this instrument. He was acting for him in his presence, and, presumptively, as he wished and directed. At all events, the evidence does not satisfy us that he was not. The trial court must have found that it was not turned over to him as an escrow, but for delivery to Larson, for it finds that "Simonson executed and delivered" it to Larson. While, under our statute, this court will review question of fact tried by the lower court without a jury, the findings of the trial court will not be disturbed, unless the evidence manifestly preponderates against them. We do not think we should be justified in reversing the finding as to this fact. The findings of the subsequent transfers from Larson down to the defendant are unsupported by the evidence, but of this plaintiff cannot complain. The action is in ejectment, and she must recover, if at all, upon the strength of her own title. Having proved no title or right of possession in herself, she cannot recover. The legal effect of Exhibit B was fully considered in our former opinion. Having examined the questions sought to be presented by a reargument we find no reason for modifying our original opinion.