J. W. JAEGER, Appellee, v. AMERICAN BONDING & CASUALTY COMPANY et al., Appellees; JOHN W. STROHM, Appellant.

MECHANICS' LIENS: Right to Lien—Taking Collateral Security.  A bondsman who, on the insolvency of the contractor, takes charge of the partially finished improvement and completes it, thereby steps into the shoes of the principal contractor; and the bondsman's

promise to pay for material and work and the furnishing of such material and work accordingly by the subcontractor will not constitute a taking of collateral security by the latter.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

NOVEMBER 13, 1923.

ACTION to establish and foreclose a mechanics' lien in favor of plaintiff and against the defendant Strohm, as owner of the property. There was a decree for plaintiff, establishing and foreclosing the lien, and decreeing that the lien of the bank was inferior thereto. Defendant Strohm alone appeals.—*Affirmed.*

*Wolfe, Wolfe & Claussen,* for appellant.

*J. E. Purcell,* for appellee.

PRESTON, C. J.—It appears that, in the first place, there was some arrangement between plaintiff and the contractor, Scott, by which plaintiff was to do the plumbing in two houses belonging to defendant Strohm, for $1,250. This action involves only one house, and plaintiff's claim therefor was about $700, a part of which has been paid to plaintiff, leaving about $434 due him. It is not clear from the record who paid the $266.

Appellant entered into a written agreement with one Scott, for the erection of a dwelling house. Scott and a Chicago bonding company executed to appellant a bond for the faithful performance of the contract. The American Bonding & Casualty Company reinsured the Chicago concern, and became obligated upon the bond. Scott became financially involved, and was unable to carry out his contract, and failed to carry out the contract for the construction of the house. The work was taken over by the American Bonding Company, after the house was partly up, and the company completed the house. Plaintiff refused to proceed under the original arrangement with Scott, and later arranged with the bonding company to furnish the labor and materials, which plaintiff did, under the arrangement, and for the bonding company, in its construction of the house. He alleges that he so furnished the labor and material at the in-

stance and request of the American Bonding Company, and with knowledge of the appellant. After the work was taken over by the bonding company, it employed Mr. Work to superintend the work, and Scott was employed by the day. Upon the completion of the dwelling house, appellant paid the full contract price to the American Bonding & Casualty Company, which held an assignment of said sum from Scott. Appellant says that, at the time of such payment, he did not know that plaintiff's claim had not been paid in full. After such payment, the American Bonding & Casualty Company became insolvent, and was placed in the hands of a receiver. Thereafter, and within the statutory period, plaintiff filed his mechanics' lien for the balance due him, $434. Plaintiff's work was finished January 15, 1921, and he filed his mechanics' lien February 11, 1921.

Appellant pleads, and it is his contention, that because, as he alleges, plaintiff accepted the promise of the bonding company to pay him, this was a collateral promise and collateral security, and that plaintiff therefore waived his right to a mechanics' lien, and is estopped to now rely thereon. We shall see in a moment that the evidence does not bear out this contention. The defendant alleges in its answer that the plaintiff agreed with the American Bonding & Casualty Company to furnish the necessary plumbing material and to install the same. As said, in the first instance there was an arrangement between plaintiff and Scott, but later, and after the bonding company had taken over the building, an agreement was entered into between plaintiff and the bonding company, and it is so alleged in defendants' answer. Plaintiff testifies that he first made the contract with Scott, and that then they did not go ahead with the work for quite a while, and that finally Mr. Strohm, appellant, met him on the street, and Strohm asked:

"'You figured that job for Scott, didn't you? I said, 'Yes.' 'Well,' he says, 'we are ready to go ahead with the work now; you can start in any time tomorrow. We want to get water in.' And then I went to Scott, and Scott says, 'Yes, you can go ahead; we got it all fixed up.' So we went ahead with the work. Strohm says, 'You need not be afraid of your money; your money will be ready when the job is finished.'"

The statement last above is denied by appellant. Lambach, the agent for the bonding company, says that he made the arrangements himself, in behalf of the bonding company. The plaintiff testifies that he never had any conversation with any representative of the bonding company, and that he never agreed to look to them for his pay for the material and labor he furnished.

But one error is assigned, and that is that the court erred in establishing plaintiff's lien, in that he accepted collateral security for the payment of his labor and material, prior to the completion of the work by him. Appellant puts it another way, by asking the question, "Was collateral security taken by plaintiff?" This is the basis of their argument. Appellant cites us to Code Section 3088, and to *Perfection Tire & Rubber Co. v. Kellogg-Mackay Equip. Co.,* 194 Iowa 523. The statute provides that no person is entitled to a mechanics' lien who, at the time of making or executing a contract for furnishing material or labor, or during the progress of the work, takes any collateral security on such contract. It is claimed for the case cited that collateral security is security additional to the principal obligation and subsidiary thereto; something that stands by the side of the principal promise, as an additional or cumulative means for securing the payment of the debt. The contention is that the bonding company promised to pay plaintiff; that plaintiff accepted the promise; and that this amounts to the taking of collateral security. But the record is that plaintiff did not accept the bonding company, in the sense contended for by appellant. It appears without any substantial dispute, and indeed the defendant alleged in its answer, that, after the bonding company took the property over, the plaintiff made an agreement with it to furnish the material. This necessarily implied a promise on the part of the bonding company to pay plaintiff therefor; and the promise of the agent of the bonding company, even if made, to pay plaintiff, would add nothing thereto, and would not constitute the taking of collateral security, or deprive plaintiff of his lien. We are inclined to think that the bonding company stepped into the shoes of the principal contractor, Scott, and that its making the contract with plaintiff constitutes the plaintiff a subcontractor. This being so, plaintiff, having

properly filed his lien statement, would not be deprived of his lien upon the failure or inability of the bonding company to pay him on his contract with it.

Appellee cites the following cases, which seem to be more or less in point: *Bissell v. Lewis,* 56 Iowa 231, 236, and other cases, to the point that the taking of a note signed by a third party for the amount of a debt is not taking collateral; also, *Gilcrest v. Gottschalk,* 39 Iowa 311, 313, to the point that the accepting of a mortgage upon the same property as that upon which the lien is claimed, for the same debt, is not taking collateral; also, *Mervin v. Sherman,* 9 Iowa 331, that the promise of a subsequent purchaser of a property to pay the claim is not the acceptance of collateral, waiving the lien. We think it unnecessary to discuss the cases.

Whether it would be possible to work out a liability on the bond as to some of the parties thereto, need not be discussed or determined, since we hold that the only point made by appellant is not well taken. The judgment and decree of the district court is—*Affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.